372 So.2d 431 (1979)
Charley F. ISON, Appellant,
v.
Rollin W. ZIMMERMAN, As Sheriff of Brevard County, State of Florida, Appellee.
No. 51950.
Supreme Court of Florida.
May 3, 1979.
Rehearing Denied July 24, 1979.
*432 John M. Starling of Crofton, Holland, Starling, Harris & Severs, Titusville, for appellant.
Joseph R. Moss, Cocoa, for appellee.
ADKINS, Justice.
This is an appeal from the circuit court of Brevard County which held that chapter *433 67-1149, Laws of Florida, is unconstitutional in that it contains a title defect and purports to restrict the duties of the office of sheriff. Art. III, §§ 6, 11, Fla. Const. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The appellee, Rollin W. Zimmerman, was elected sheriff of Brevard County to assume office January 1, 1977. The appellant, Charles F. Ison, had become a member of the incumbent sheriff's force in 1963 as a uniformed deputy and had continuously occupied various positions through December 1976. On December 19, 1976, newly-elected Sheriff Zimmerman sent Ison a letter terminating his employment effective December 31, 1976, as deputy inspector and assistant commanding officer of the fourth division of the sheriff's department. Zimmerman explained in the letter that he had reorganized the sheriff's department. As a result, in the interest of efficiency but expressly not because of any personal lack of competency or qualifications, Ison would not be retained since he had been one of the former sheriff's commanders and "managerial-policymaking officers."
Prior to Ison's termination in November 1976, the "lame-duck" sheriff, L.S. Wilson, had revived a civil service board under chapter 67-1149, Laws of Florida, entitled "An act creating civil service for employees of the office of sheriff" of Brevard County. (Hereinafter referred to as chapter 67-1149). Although required by this special act, the civil service board had not functioned since 1969. After meeting as the newly-revived board in December 1976, the three members of the board appointed by Sheriff Wilson resigned so that Ison and other terminated deputies of Wilson could sue the incoming sheriff in federal court. Sheriff Zimmerman held an administrative hearing on December 29, 1976, after this federal litigation had begun, to give Ison and the others an opportunity to be heard concerning their termination. On advice of counsel, Ison and the others failed to appear at the appointed time and place.
Ison alleged in his complaint that the procedure used in terminating him did not comply with chapter 67-1149 since Sheriff Zimmerman did not furnish Ison with written charges and a hearing. Ch. 67-1149, § 17, Laws of Fla. In addition, appellant alleged that he was a "public employee" as defined by chapter 447, Florida Statutes (1976), and entitled as such to a fair and equitable grievance procedure under section 447.401, Florida Statutes (1976), to determine whether proper cause existed for his termination.
The circuit court held that chapter 67-1149 was unconstitutionally restrictive of the duties of the Brevard County sheriff to retain his deputies, and also unconstitutionally defective in its title. Specifically, the circuit court held that a deputy sheriff was not an "employee of the office of sheriff" encompassed by the title. The circuit court denied Ison an injunction directing Sheriff Zimmerman to reinstate him under chapter 67-1149, and also dismissed Ison's prayer for relief under chapter 447.
We find no merit to appellant's contention that as a "public employee" he is entitled to relief under chapter 447. Confronted with the identical question of whether a deputy sheriff is a "public employee" under the definition of this term in chapter 447, we have already answered this question in the negative in Murphy v. Mack, 358 So.2d 822 (Fla. 1978). In recognition of the peculiar status of the deputy sheriff as officer of the sheriff, himself a constitutional officer, we held there that a deputy sheriff was not a "public employee" within the contemplation of chapter 447. A deputy sheriff was therein distinguished from other employees of the sheriff, such as secretaries.
Although chapter 447 affords appellant no basis for relief, we do find merit in his contention that he is entitled to relief under chapter 67-1149. For we find this special act to be constitutionally valid in that it contains neither an unconstitutional restriction on the duties of the office of sheriff nor an invalid title.
Appellee argues first that two sections of the 1968 constitution must be read in pari materia to render chapter 67-1149 unconstitutional. *434 Appellee urges this court declare that chapter 67-1149 is a special act in violation of article III, section 11(a), Florida Constitution.
The two sections are article III, section 11(a), "Prohibited special laws":
There shall be no special law or general law of local application pertaining to election, jurisdiction or duties of officers. [Emphasis added.]
and article III, section 14, "Civil service systems":

By law there shall be created a civil service system for state employees ... and there may be created civil service boards for county, district or municipal employees, and for such offices thereof as are not elected or appointed by the governor. [Emphasis added.]
Appellee would have us construe the language in article III, section 14 so that "by law" is restricted to "by general law." This would render the Act a special act infringing on the duties of the sheriff to retain his deputies.
We reject this construction of the ambiguous phrase "by law." Appellee's argument is based on the two constitutional sections' alleged intrinsic evidence of the meaning of "by law." It is axiomatic that to clarify the meaning of an ambiguously drafted provision, resort may be had to extrinsic evidence of the drafters' intent in adopting a particular wording. In this instance strong extrinsic evidence shows us that the drafters intended the meaning of "by law" to encompass both "by general law" and "by special or local law." Further support for the broader meaning includes:
1) previous history of the provision;
2) contemporaneous commentary on the drafters' intent; and
3) subsequent legislative action.
First, regarding the history of the provision, article III, section 14 in the revised constitution of 1968 existed in an earlier version in article XVI, section 34 of the constitution of 1885, under which chapter 67-1149 was enacted. The earlier version expressly authorized the legislature to create civil service systems by special law:
Civil service system and boards. Section 34. The Legislature may by general, special or local laws create civil service and civil service boards for municipal, county, and state employees, and for municipal, county and state officers not appointed by the governor or elected by the people ... and the Legislature may authorize such civil service boards to provide [further] for the qualifications and method of employing such employees and officers and to prescribe the length of their terms of office or employment.
The 1885 constitution as amended also contained an earlier version of article III, section 11 of the 1968 constitution in the former's article III, section 20, prohibiting special acts regulating duties of officers.
Special and private laws, when prohibited. Section 20. The Legislature shall not pass special or local laws in any of the enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers ...
These earlier two versions of the 1968 constitutional provisions read in pari materia in the 1885 constitution cannot be considered contradictory to each other, although article XVI, section 34, expressly authorizes special laws relating to civil service for officers. Hence it is illogical to say these two sections' later versions in the 1968 constitution contradict each other, unless the simplified wording of "by law" is read to prohibit creation of civil service "by special law."
Secondly, the reporter's contemporaneous commentary regarding the wording of article III, section 14 in the 1968 constitution explains that the change in language is mere simplification. 25A Fla. Stat. Ann. 786, 787.
Finally, subsequent legislative action supports a construction of article III, section 14 of the 1968 constitution that allows creation of civil service systems by special or local laws for deputies as officers "not elected or appointed by the governor." Section 30.53, Florida Statutes (1977), reads:

*435 Independence of sheriffs shall be preserved concerning ... hiring, firing ... provided that nothing herein contained shall restrict the establishment or operation of any civil service system or civil service board created pursuant to section 14, Article III, of the Constitution of Florida, provided further that nothing contained in sections 30.48-30.53 shall be construed to alter, modify, or change in any manner any civil service system or board, state or local now in existence or hereafter established. [Emphasis added.]
In light of the foregoing, we hold that special civil service acts do not unconstitutionally restrict the duties of the office of sheriff. We may dispose summarily of appellee's related contention that deputy sheriffs should not be protected by civil service. Appellee contends that deputies historically have been considered not employees but officers, imbued with some degree of the sovereign power of the sheriff's office. Therefore, appellee concludes, a sheriff should have absolute control over his choice of deputies. However, we decline to approve judicially such a sweeping view of the sheriff's duties to retain his deputies. For this view would obviously contradict both: (1) the spirit of article III, section 14, the constitutional mandate for the establishment of civil service for "employees and officers," and (2) the clear legislative intent in section 30.53, with its specific exception to the independence of the sheriff's duties in furtherance of civil service systems.
Furthermore, the legislature already has enunciated in chapter 67-1149 its policy as to which deputies are as a matter of fact so much the sheriff's "officers," and are as a matter of degree invested with so much of the sovereign power of his office, that the sheriff may have absolute control over their retention. Specifically, chapter 67-1149 already refuses to extend civil service protection to the "position of the office of sheriff, chief deputy, chief criminal deputy, and chief civil deputy", and exempts them accordingly from the Act's classified service. Ch. 67-1149, § 2, Laws of Fla.
This legislative determination to distinguish among various sheriff's officers and employees for purposes of chapter 67-1149 comports with the provision relating to civil service establishment in article III, section 14 of the 1968 constitution. For this section does not require "all" officers and employees be extended protection, merely "such" officers and employees enumerated or not expressly exempted. Since this Court does not function as a fact-finder or policy-maker for the legislature, it is not our role to refine further on a presumptively constitutional legislative determination. Here the legislature indisputably has determined which deputies should be denied civil service protection because of the degree of sovereign power exercised.
There remains the question of whether chapter 67-1149 is unconstitutional on the formal ground of a title defect. The title of chapter 67-1149 is "An Act creating civil service for employees of the office of sheriff." Appellee alleges a title defect because the title excludes deputy sheriffs as officers, and refers only to "employees" of the office of sheriff, whereas the Act's contents refer to both employees and deputy sheriff officers.
It is fundamental that courts will uphold the constitutionality of an act wherever possible. Scavella v. School Board of Dade County, 363 So.2d 1095 (Fla. 1978). The constitutional requirement for an act's title is that it give notice as to the act's contents, and, moreover, not mislead the public or the legislature as to the scope of the act. The test of whether a title misleads is whether it would deceive the mind of an ordinary person used to the common meaning of language, not the mind of a precisionist used to technical refinements of terms. Finally, the burden of proof is upon the party asserting the title defect to show the title fails to meet the constitutional standard. King Kole, Inc. v. Bryant, 178 So.2d 2 (Fla. 1965); 30 Fla.Jur. Statutes § 49 (1974).
The narrow question here is whether the title of chapter 47-1149 would mislead *436 the public and not put on notice an ordinary mind used to the common meaning of "employees of the office." In light of the strictly applied constitutional test, appellee clearly has failed to meet the burden of showing a title defect. For in the common meaning of the word "employee", a deputy sheriff is an employee of the sheriff, or a person whose services are engaged and recompensed by the sheriff. It is true that the deputy also is technically an officer of the sheriff as distinguished from an employee in the legalistic sense of the historic distinction between officers and employees. But this precisionist refinement upon the common meaning of "employee" will not suffice to defeat the constitutionality of the Act's title.
Even beyond the basic principle that a title's validity is to be measured by the common meaning of its wording, we interpret this title's wording as a generalized but sufficient reference to both employees and officers. For we construe the phrase "employees of the office" as an appropriately brief wording designed not to deceive the public but rather to avoid the redundancy of "employees of the office and officers of the office." Deputy sheriffs as officers are repeatedly mentioned within the body of the Act. That deputy officers also are obviously intended to be embraced by the Act's title is clear from the title's phrasing "employees of the office of sheriff." [Emphasis added.] The title is not merely "employees of the sheriff" but "employees of the office of sheriff;" as a result, the phrase "office of sheriff" must surely evince the sheriff's office's "officers," or deputies, to even the technically minded. Plainly, deputies as officers are those persons with or "of the office" of sheriff in the most literal sense, in that they partake to a limited degree of the sheriff's sovereign powers as constitutional officer.
Indeed, to encourage such implicitly complete but literally abbreviated titles, we already have held that a title need not be an index to its contents. King Kole, Inc. v. Bryant, supra. As a corollary, it is generally accepted that the principle that expression of one thing is the exclusion of all others does not apply to titles. Mayo v. Polk Company, 124 Fla. 534, 169 So. 41 appeal dismissed, 299 U.S. 507, 57 S.Ct. 39, 81 L.Ed. 376 (1936), J. Sutherland, 1A Statutes and Statutory Construction § 18.04 (4th ed. C. Sands 1972).
Since we have determined chapter 67-1149 to be a constitutional act despite both the substantive and formal challenges raised, it is clear that appellant as a member of the classified service under section 2 of the Act had its rights of civil service protection. Specifically, appellant had the right to written charges and a hearing for cause before the incoming sheriff unilaterally notified him of his termination. Furthermore, the irrelevant fact that the civil service board mandated by the Act was not in active operation throughout 1976 cannot be used to defeat the appellant's rights under the Act.
The judgment appealed from is reversed. The case is remanded for proceedings consistent with this opinion. It is so ordered.
ENGLAND, C.J., and BOYD, OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.