457 So.2d 1125 (1984)
ORANGE COUNTY POLICE BENEVOLENT ASSOCIATION, Appellant,
v.
CITY OF CASSELBERRY and Florida Public Employees Relations Commission, Appellees.
No. AS-43.
District Court of Appeal of Florida, First District.
October 16, 1984.
*1126 Thomas J. Pilacek of Pilacek, Cohen & Sommers, Orlando, for appellant.
Frank C. Kruppenbacher of Swann & Haddock, Orlando, for appellee City.
Thomas W. Young, III, Tallahassee, for appellee PERC.
NIMMONS, Judge.
The Orange County Police Benevolent Association (PBA) appeals from an order of the Public Employees Relations Commission (PERC) rejecting the hearing officer's recommended order and holding that the City of Casselberry (City) was not guilty of an unfair labor practice in the process of negotiating a collective bargaining agreement for the bargaining unit's City police officers.[1] We agree with the hearing officer who concluded that the City committed an unfair labor practice under Section 447.501(1)(a) and (c), Florida Statutes (1981)[2] by insisting to the point of impasse upon the exclusion of disputes regarding discharge and demotion from a grievance procedure which ends in binding arbitration. We therefore reverse PERC's order.
We summarize the facts which are taken from the hearing officer's recommended order, as augmented in PERC's final order. In August, 1981, PBA was certified as the bargaining agent for the City's police officers, excluding sergeants, lieutenants, assistant chief, chief and non-sworn personnel. Bargaining for an initial contract commenced in October, 1981. There were approximately ten negotiating sessions over the next ten months. From the inception, and throughout the period of negotiations, PBA contended that the contract's "grievance procedure culminating in binding arbitration," a provision required by Section 447.401, Florida Statutes (1981),[3] should include *1127 disputes involving discharge or demotion. The City, however, consistently maintained that any agreed upon demotion and discharge provision should not be handled through the contract's grievance procedure. Instead, it was the City's position that such matters should be processed through the City's existing civil service procedures. At one point, the City, as an alternative to its preferred position, offered to submit grievances regarding discharge or demotion to a panel of law enforcement officers similar to that provided for by Section 112.532, Florida Statutes (1981). This was not accepted. Also, there was discussion about a detailed definition of "cause" for discharge. However, no agreement was reached prior to impasse regarding any demotion or discharge provision or definition of cause.
During the course of negotiations, the parties reached agreement on such subjects as overtime, workweek, workshift, leaves of absence, compensation for injuries, equipment safety, life insurance and medical insurance. When PBA declared impasse on August 5, 1982, the issues regarding wages and demotion and discharge were still pending and in dispute. At no time did PBA ever volunteer to exclude disputes involving discharge or demotion from a grievance-to-arbitration provision. Following PBA's declaration of impasse, the City proposed certain disciplinary provisions contained in existing collective bargaining agreements from two other municipalities. The PBA declined the offer because the provisions were not covered by a grievance-to-arbitration provision.
After the declaration of impasse on August 5, 1982, the parties continued to negotiate and eventually reached an agreement on October 7, 1982, the date of the evidentiary hearing on PBA's unfair labor practice charge. The parties never utilized a special master or other procedures available under Section 447.403 for the resolution of impasses. The parties stipulated in the proceedings below that agreement on a contract did not render moot PBA's unfair labor practice charge.
The basic question involved in this case is whether the City committed an unfair labor practice by insisting to the point of impasse upon a non-mandatory (or "permissive") subject of bargaining as a condition to an agreement upon mandatory subjects. The employer and employee have the duty to bargain in good faith on the subjects of wages, hours and terms and conditions of employment. Each party is entitled to press its position on these mandatory subjects to the point of impasse (which in the public sector may lead to provisions imposed upon the parties through the statutory impasse procedures including resolution through legislative action, Section 447.403, Florida Statutes). NLRB v. Wooster, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958); Latrobe Steel Co. v. NLRB, 630 F.2d 171 (3rd Cir.1980).[4] On the other hand, there is no duty to bargain on non-mandatory (or permissive) subjects, and each party is free to bargain or not to bargain, or agree or not to agree as he sees fit. And a party's insistence upon a non-mandatory subject as a condition to agreement on mandatory subjects *1128 amounts to a refusal to bargain and constitutes an unfair labor practice. Latrobe, supra, at 175; Palm Beach Junior College v. United Faculty of Palm Beach Junior College, 425 So.2d 133, 138 (Fla. 1st DCA 1983).
Demotion and discharge, including the definition of "cause" for discharge, are mandatory subjects of bargaining concerning which the parties are obligated to negotiate in good faith, and may do so to impasse. See Public Employees Relations Commission v. District School Board of DeSoto County, 374 So.2d 1005, 1013 (Fla. 2nd DCA 1979) (held that matters pertaining to the discharge of teachers are terms and conditions of employment.)
We hold that, under a proper construction of Chapter 447, Part II, the exclusion of demotion and discharge provisions from the grievance-to-arbitration provisions of the contract is a non-mandatory subject of bargaining even where the City has an existing civil service ordinance covering demotion and discharge. Section 447.401 (reproduced at footnote 3 supra) provides that the parties "shall negotiate a grievance procedure to be used for the settlement of disputes ... involving the interpretation or application" of the agreement and that such procedure shall provide for binding arbitration as its final step. That is not to say that a collective bargaining agreement which exempts its demotion and discharge provision from the operation of its grievance procedure in favor of existing civil service procedures is invalid or illegal. As this court held in American Federation of State, County & Municipal Employees, Local 1363 v. Florida Public Employees Relations Commission, 430 So.2d 481 (Fla. 1st DCA 1983) (hereafter "AFSCME, Local 1363"), Section 447.401 must be read in pari materia with Section 447.309(5), Florida Statutes (1981), which provides that collective bargaining agreements "shall contain all of the terms and conditions of employment ... except those terms and conditions provided for ... in applicable merit and civil service rules and regulations." We, therefore, held in AFSCME, Local 1363 that such a contract, notwithstanding that it purports to exempt certain of its provisions from the grievance-to-arbitration provision required by Section 447.401, is valid where the parties voluntarily entered into it. But to say that a collective bargaining agreement which utilizes existing civil service procedures in lieu of the grievance-to-arbitration mechanism contemplated by Section 447.401 is valid is not to say that the public employer, in negotiating a contract, is at liberty to insist to impasse upon excepting demotion and discharge provisions from the statutorily required grievance procedure. That is still a protected non-mandatory subject of bargaining and has been recognized as such by PERC in its order in AFSCME, Local 1363, 8 FPER ¶ 13278 and in its brief in the instant case.
PERC's order points to the provisions of Section 447.203(14) which, while requiring the parties to negotiate the terms and conditions of employment, provides that "neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this part." PERC's reliance upon this provision is misplaced. That section does not alter the principles discussed above regarding the rights and obligations of the parties with respect to mandatory and non-mandatory subjects of bargaining.
In its appealed order, PERC relied upon the erroneous legal conclusion that the validity of PBA's unfair labor practice charge was dependent upon the parties having reached agreement upon a demotion and discharge provision. PERC reasoned:
[W]ithout a contractual provision covering demotion and discharge, there can be no duty to agree to a grievance provision which includes the arbitration of demotion and discharge decision.
And PERC's order, in rejecting the hearing officer's view that the City had refused to bargain in good faith, observed that the hearing officer had "apparently" relied upon the conclusion that a demotion and discharge provision had been agreed upon prior to the declaration of impasse. In the first place, the hearing officer made no *1129 such finding of an agreement on a demotion and discharge provision. Indeed, such a finding would have been contrary to the evidence.[5] But, secondly, agreement on such a provision was not a prerequisite to PBA's unfair labor practice charge. In order to constitute an unfair labor practice, it was sufficient for PBA to establish that the City insisted to the point of impasse upon the exclusion of demotion and discharge from the statutorily required grievance-to-arbitration provision (a non-mandatory subject of bargaining) as a condition to the agreement upon mandatory subjects such as demotion and discharge provisions, definition of "cause" for discharge, and wages.
PERC's order rejecting the recommended order was also predicated, in part, upon the fact that after the declaration of impasse the parties eventually reached agreement on a collective bargaining agreement without resorting to impasse proceedings before a special master as contemplated by Section 447.403. For purposes of the determination of whether a party has committed an unfair labor practice by insisting to the point of impasse upon a non-mandatory provision, the offending party is not insulated from responsibility for its conduct by reason of either the non-use of the statutory impasse procedures or the parties' eventual post-impasse agreement. One court has referred to the talismanic invocation of the term "impasse" in the private sector thusly:
The concept of "impasse" is relevant in several contexts involving collective bargaining. In each context, however, its significance is somewhat different. "Impasse" may be used to describe that point at which there is a sufficient disagreement over a mandatory subject of bargaining to permit unilateral action by one of the parties on that subject. [citations omitted] It may also be used to refer to a breakdown in all negotiations over either one or several issues. [citations omitted] In this latter sense, "impasse" is relevant to the Borg-Warner question. See page 180, infra. [citations omitted] We have grave doubts, however, as to the usefulness of the concept of "impasse" as a level of disagreement over a single issue where that issue is a non-mandatory subject of bargaining. As Borg-Warner [National Labor Relations Board v. Wooster Division of Borg-Warner Corporation, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823] makes clear, there can be no adverse consequence from a party's failure to agree or even his failure to bargain about a non-mandatory subject of bargaining. What Borg-Warner prohibits is insistence upon a non-mandatory subject as a condition precedent to entering an agreement. 356 U.S. at 349, 78 S.Ct. at 722. This is the standard which must guide the inquiry. [citations omitted]
Latrobe Steel Company v. NLRB, supra at 179. We do recognize that the term "impasse" as used in the private sector is not identical with the same term under the public sector provisions of Chapter 447. "Impasse" is not defined under the National Labor Relations Act and its meaning is determined on a case-by-case basis. On the other hand, Section 447.403(1) defines the term. Under that section, impasse shall be deemed to have occurred when: (1) dispute still exists over the terms and conditions of employment after a reasonable period of negotiation; and (2) one of the parties declares in writing to the other party and to PERC that they are at impasse. It has been observed that "impasse" under Section 447.403(1) "is fundamentally dissimilar to the private sector concept because a statutory impasse occurs before the end of the parties' obligations to participate in *1130 good faith bargaining." Schulman, The Case of Frustrated or Unsuccessful Public Employee Collective Bargaining: A Review of the Developing Legal Concepts In Florida, Vol. 30 Fla.L.Rev. 867. And, as recognized in Hollywood Fire Fighters Local 1375 v. City of Hollywood, 8 FPER ¶ 13333 (August 18, 1982) (Commissioner Renovitch, specially concurring), in order for parties to be considered at impasse under Section 447.403(1), the parties need not be at the point of "deadlock" as contemplated in private sector impasse.
In any event, the hearing officer, based upon the evidence presented, found that the parties were deadlocked:
I have carefully considered whether the parties were in fact at impasse on this point when the PBA declared impasse, and I conclude that the parties were in fact deadlocked and at loggerheads.
Although PERC's order did not take issue as such with the hearing officer's above finding, appellees argue on appeal that the City did not insist to the point of impasse upon the non-mandatory subject. The hearing officer found otherwise, and his findings are supported by competent substantial evidence and the applicable law.
The City also asserts that reversal of PERC's order will result in an unconstitutional application of Chapter 447 under Article III, Section 14, of the Florida Constitution which allows municipalities to establish their own civil service system.[6] A similar predecessor provision existed prior to the 1968 Revision of the Florida Constitution. See Ison v. Zimmerman, 372 So.2d 431, 434 (Fla. 1979). That provision was therefore in existence when the citizens of Florida adopted the revised 1968 Constitution which, for the first time, accorded public employees the same collective bargaining rights, with the exception of the right to strike, as those enjoyed by employees in the private sector. Article I, Section 6, Constitution of Florida, 1968 Revision; City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487, 489 (Fla. 1982); Dade County Classroom Teachers' Association, Inc. v. Ryan, 225 So.2d 903 (Fla. 1969). Reading the two constitutional provisions in pari materia, we do not believe that Article III, Section 14, can reasonably be construed to deny the collective bargaining protections sought by the appellant in the case at bar which protections are guaranteed under Article I, Section 6.
Although neither the City nor PERC has relied upon or cited to Section 447.601, Florida Statutes (1981), we point out that we have considered its possible application and find that it does not conflict with our holding or analysis. That section provides:
447.601 Merit or civil service system; applicability.  The provisions of this part shall not be construed to repeal, amend, or modify the provisions of any law or ordinance establishing a merit or civil service system for public employees or the rules and regulations adopted pursuant thereto or to prohibit or hinder the establishment of other such personnel systems unless the provisions of such merit or civil service system laws or ordinances or rules and regulations adopted pursuant thereto are in conflict with the provisions of this part, in which event such laws, ordinances, or rules and regulations shall not apply, except as provided in s. 447.301(4).
As we have held in this opinion, under a proper construction of Chapter 447, Part II, the exclusion of demotion and discharge from the statutorily required grievance-to-arbitration provisions is a non-mandatory subject of bargaining even where the public employee has an existing civil service ordinance covering demotion and discharge. Given that holding along with the recognition that demotion and discharge are mandatory subjects of bargaining under Chapter 447, the City's position that the existence of its civil service ordinance provisions entitles the City to insist upon the exclusion *1131 of demotion and discharge from the contract's grievance provision is in conflict with a proper construction of Chapter 447. Indeed, if the effect of Section 447.601 were other than as we have suggested, we would perhaps then be confronted with a conflict between that section and Article I, Section 6.
In view of the foregoing, we reverse PERC's order dismissing PBA's unfair labor practice charge and remand for the entry of an order finding that the City committed an unfair labor practice. Inasmuch as PERC has not as yet considered the imposition of sanctions, it shall do so on remand and enter an appropriate order giving due consideration to the hearing officer's recommended order with respect thereto. Likewise, since PERC denied PBA an award of attorneys' fees because of its dismissal of the unfair labor practice charge, PERC shall also consider anew the question of attorneys' fees and the hearing officer's recommendation regarding same.
Reversed and Remanded.[7]
SMITH and WIGGINTON, JJ., concur.
NOTES
[1] PERC's order and the hearing officer's recommended order are reported at 9 FPER ¶ 14120.
[2] 447.501 Unfair labor practices. 

(1) Public employers or their agents or representatives are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
* * * * * *
(c) Refusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit.
[3] Grievance procedures.  Each public employer and bargaining agent shall negotiate a grievance procedure to be used for the settlement of disputes between employer and employee, or group of employees, involving the interpretation or application of a collective bargaining agreement. Such grievance procedure shall have as its terminal step a final and binding disposition by an impartial neutral, mutually selected by the parties. However, an arbiter or other neutral shall not have the power to add to, subtract from, modify, or alter the terms of a collective bargaining agreement. If an employee organization is certified as the bargaining agent of a unit, the grievance procedure then in existence may be the subject of collective bargaining, and any agreement which is reached shall supersede the previously existing procedure. All public employees shall have the right to a fair and equitable grievance procedure, administered without regard to membership or nonmembership in any organization, except that certified employee organizations shall not be required to process grievances for employees who are not members of the organization. A career service employee shall have the option of utilizing the civil service appeal procedure or a grievance procedure established under this section, but such employee cannot use both a civil service appeal and a grievance procedure.
[4] We recognize as persuasive authority federal decisions construing the National Labor Relations Act to the extent that Chapter 447 and such Act are analogous. Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108, 116 (Fla. 1st DCA 1977).
[5] PBA desires, in view of the "unexpected rationale" of PERC's order, to supplement the record on appeal by the submission of the agreement eventually reached after impasse which agreement purportedly includes a "proper cause" provision but which agreement was not received in evidence in the proceedings below. In view of our holding that the principal rationale of PERC's order was erroneous, it is unnecessary for us to consider the supplemental materials which PBA seeks to have included over appellees' objections. We therefore deny PBA's motion to supplement.
[6] PERC does not join the City in this argument. We also note that neither the hearing officer nor PERC addressed this argument.
[7] After oral argument, Judge Joanos recused himself and was replaced on the panel by Judge Smith who has listened to the tape recording of the oral arguments.