482 So.2d 336 (1986)
CITY OF CASSELBERRY, Petitioner,
v.
ORANGE COUNTY POLICE BENEVOLENT AsSOCIATION and Florida Public Employees Relations Commission, Respondents.
No. 66155.
Supreme Court of Florida.
January 9, 1986.
*337 Frank C. Kruppenbacher of Swann & Haddock, Orlando, for petitioner.
Thomas J. Pilacek of Pilacek & Cohen, Orlando, for Orange County Police Benev. Ass'n; and Phillip P. Quaschnick, Gen. Counsel, and Stuart M. Lerner, Deputy Gen. Counsel, Tallahassee, for Public Employees Relations Com'n, for respondents.
J. Ronald Wigginton, Gen. Counsel, Tampa, and Peter W. Zinober and Richard C. McCrea, Jr. of Carlton, Fields, Ward, Emmanuel, Smith and Cutler, Tampa, amicus curiae for Hillsborough County Civil Service Bd.
McDONALD, Justice.
We have for review Orange County Police Benevolent Association v. City of Casselberry, 457 So.2d 1125 (Fla. 1st DCA 1984), which expressly construes article I, section 6 and article III, section 14 of the Florida Constitution. This Court has jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. The first issue is whether a city which has established provisions for demotion and discharge of police officers in its civil service ordinance is required to bargain collectively on those issues to the extent of establishing, and being subject to, alternate grievance procedures. The second issue is whether the City of Casselberry committed an unfair labor practice during its negotiations with the union where the union declared an impasse during discussions concerning the subject of demotion and discharge grievance procedures. We approve the district court's decision as to the first issue but quash its result on the second.
The facts in this case are largely undisputed. In August 1981 the Orange County Police Benevolent Association (PBA) was certified as the bargaining agent for the City of Casselberry's police officers, excluding sergeants, lieutenants, assistant chief, chief, and nonsworn personnel. Bargaining for an initial contract began in October 1981. The record shows that on October 30, 1981 the PBA proposed to the city that all grievances arising out of the application of the collective bargaining agreement be submitted through a grievance procedure which had final and binding arbitration as its terminal step. Throughout the period of negotiation, the PBA refused to make any exceptions to this proposal. The city, on the other hand, refused to submit demotions and discharge grievances to this procedure. Instead, the city maintained that demotion and discharge matters should be handled by the city's existing civil service dispute resolution machinery.
During the nearly ten months of negotiations preceding the August 5, 1982 session, the city and the PBA reached agreement on most facets of the overall collective bargaining agreement. These included overtime, workweek, workshift, leaves of absence, compensation for injuries, equipment, equipment safety, life insurance, and medical insurance. Demotion and discharge grievance procedures were discussed frequently during these negotiating *338 sessions. Moreover, the city proposed alternative methods of dealing with demotion and discharge grievances during these discussions. None of these alternatives included binding arbitration as a final step, however, and the PBA rejected them. By August 5, 1982 the city and the PBA still had not reached agreement regarding either demotion and discharge grievances or wages.
At the August 5th session the PBA, without giving prior warning to the city, declared an impasse and afterward filed an unfair labor practices suit against the city. Once impasse was announced, however, the impasse procedures set out in section 447.403, Florida Statutes (1981),[1] were not followed; neither a mediator nor a special master was appointed. Also, the PBA failed to serve written notice of impasse to the city and the Public Employees Relations Commission (PERC) as required by section 447.403(1), Florida Statutes (1981). Instead, after the PBA declared an impasse, the parties continued to negotiate and eventually reached an agreement on October 7, 1982, the date of the evidentiary hearing on the PBA's unfair labor practices charge. The parties, however, stipulated at that proceeding that the agreement on a contract did not render moot the PBA's unfair labor practices charge.
On December 16, 1982 the hearing officer issued a recommended order, finding the city guilty of committing an unfair labor practice. On February 28, 1983, however, PERC rejected the hearing officer's conclusion and dismissed all portions of the unfair labor practices charge. PERC based much of its ruling on the assumption that, absent agreement on a demotion and discharge provision and absent any impasse proceedings before a special master where such a provision could be legislatively imposed, no grievance potentially subject to review through binding arbitration could arise. Consequently, without an underlying contractual term concerning demotion and discharge, there could be no duty to agree to a grievance provision covering demotion and discharge. PERC stated that, while the PBA might have believed that section 447.401, Florida Statutes (1981), required every contract to contain a discharge and demotion provision, the statute did not in fact specifically compel the inclusion of such a term.
The district court took exception to PERC's analysis. The district court stated the question in the case at bar as whether the city committed an unfair labor practice by insisting to the point of impasse upon a nonmandatory subject of bargaining as a condition precedent to an agreement upon mandatory subjects and found that it had. The district court further ruled that the application of chapter 447 did not result in an unconstitutional violation of the municipality's right to establish its own civil service system. We shall begin by analyzing this constitutional ruling.
Article I, section 6 of the Florida Constitution guarantees that the right of employees to bargain collectively shall not be denied or abridged. Section 447.401 provides that parties "shall negotiate a grievance procedure to be used for the settlement of disputes ... involving the interpretation or application of a collective bargaining agreement." Section 447.401 further requires that such procedure shall provide for binding arbitration as its final step. The city argues that, as interpreted by the district court, these two provisions operate in concert to infringe on the city's constitutional *339 right to establish a civil service system. The city maintains that its authority to establish its civil service system directly emanates from article III, section 14 of the Florida Constitution. Article III, section 14 states that "[b]y law there... may be created civil service systems and boards for county, district or municipal employees... ." The city's reliance on this constitutional language, however, is misplaced.
In Ison v. Zimmerman, 372 So.2d 431 (Fla. 1979), this Court examined the meaning of the ambiguous phrase "by law" as used in article III, section 14. The appellee in Ison had argued that this Court should restrict those civil service systems authorized by article III, section 14 to those created by the state legislature through general law. Id. at 434. After discussing in significant detail both the legislative history and the intent of the drafters of that constitutional provision, we concluded that article III, section 14 also covered "special or local laws." Id. The legislative history of section 14 would also seem to indicate, however, that this provision was only intended to authorize enactments by the state legislature. The term "by law" as used in section 14 was never intended to serve as the authorization for local governments to establish such systems by ordinance to the exclusion of contrary state statutes. Actually, as pointed out by the PBA and PERC in the instant case, article III deals solely with the powers of the state legislature, not local government.
Clearly, however, local governments are vested with the authority to establish civil service systems via local ordinance. Article VIII, section 2(b) of the Florida Constitution provides that "[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purpose except as otherwise provided by law." (Emphasis added). While this provision does not expressly mention the creation of civil service systems by ordinance, the authority to creat such a system is inherent within this broad grant of power.[2] Indeed, section 447.601, Florida Statutes (1981), expressly recognizes the existence of locally created civil service mechanisms when it sets out priorities in cases of conflict such as the case at bar. Section 447.601 provides in part that the provisions of chapter 447, part II, "shall not be construed to repeal, amend, or modify the provisions of any law or ordinance establishing a merit or civil service system for public employees ... unless the provisions of such merit or civil service system laws or ordinances ... are in conflict with the provisions of this part [sections 447.201-,609], in which event such laws [or] ordinances... shall not apply... ." Accordingly, while the city has the authority to enact civil service ordinances, state statutes will take precedence over such ordinances where specific conflicts arise.
This priority system is expressly set out in both section 447.601 and article VIII, *340 section 2(b), the source of the municipality's power to enact the ordinance in the first place. Indeed, this Court has long held as a general rule that a statewide statute prevails over a conflicting municipal ordinance. E.g., Rinzler v. Carson, 262 So.2d 661, 668 (Fla. 1972); City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801, 806 (Fla. 1972); Miami Shores Village v. Wm. N. Brockway Post No. 124 of American Legion, 156 Fla. 673, 678, 24 So.2d 33, 35 (1945). The instant case is no exception to that rule. Accordingly, any conflict arising between section 447.401 and the Civil Service Act of the City of Casselberry, Florida,[3] must be resolved in favor of section 447.401.
Yet section 447.401 does not threaten to undermine local civil service systems statewide as the city suggests. Generally speaking, chapter 447 was designed to peacefully co-exist with local civil service systems and was not intended to displace them.[4] Only where the local machinery directly conflicts with a provision of general law would the local system be adversely affected. Moreover, a union and a public employer would be perfectly within their rights to voluntarily exclude some aspect of their collective bargaining agreement from section 447.401 and utilize exclusively the dispute resolution machinery of a civil service board. All that would be required is a mutual agreement to do so. In re AFSCME, Local 1363, 8 FPER ¶ 13,278 at 489, aff'd, 430 So.2d 481 (Fla. 1st DCA 1983). See Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 475 So.2d 1221 (Fla. 1985). Therefore, the district court correctly concluded that section 447.401 and article I, section 6 do not unconstitutionally infringe on the city's civil service system.
On the issue of whether the city committed an unfair labor practice, we do not agree with the district court. The district court held:
In order to constitute an unfair labor practice, it was sufficient for PBA to establish that the City insisted to the point of impasse upon the exclusion of demotion and discharge from the statutorily required grievance-to-arbitration provision ... as a condition to the agreement upon mandatory subjects such as demotion and discharge provisions, definition of "cause" for discharge, and wages.
457 So.2d at 1129. We agree that it is an unfair labor practice to require an adverse party to agree to a nonmandatory bargaining point as a condition to bargaining on mandatory matters. Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 425 So.2d 133, 140 (Fla. 1st DCA 1982), approved in part, disapproved in part, 475 So.2d 1221 (Fla. 1985). The city could not require the exclusion of a grievance procedure from bargaining as a condition to enter an agreement on other subjects. National Labor Relations Board v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 349, 78 S.Ct. 718, 722-723, 2 L.Ed.2d 823 (1958); 475 So.2d at 1227; 8 FPER at 489. But that is not what happened in this case.
The city negotiated on all pertinent subjects including this one. Apparently, it honestly felt that its civil service procedures should apply, but this view was not used as a weapon on other subjects and did not interfere with an agreement being reached on any other subject. It is not an unfair labor practice to urge a certain position *341 in the bargaining process. At the time of these bargaining proceedings there was no Florida case adopting the legal position of the union. An honest belief, not used to thwart the bargaining process, is not equivalent to bad faith. Had the city insisted on this nonmandatory subject (the exclusion of a grievance procedure for demotion and discharge) as a condition to entering an agreement, the result reached by the district court would have been proper. At the very least, if the union felt that this disagreement created an impasse, under the circumstances of this case the statutory impasse procedure should have been utilized before an unfair labor practice complaint could be made.
Accordingly, we approve the district court's conclusion concerning the constitutionality of section 474.401 and that civil service ordinances do not affect the required bargaining powers, but quash its finding that the City of Casselberry committed an unfair labor practice.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
NOTES
[1] § 447.403, Fla. Stat. (1981), provides in part that if, after a reasonable period of negotiation, a dispute still exists concerning a term or condition of employment included in an elective bargaining agreement, an impasse may be declared. An impasse shall be deemed to occur when one of the parties so declares in writing to the other party and to the commission. When an impasse occurs, the public employer or the bargaining agent, or both acting jointly, may appoint or secure the appointment of a mediator.

If no mediator is appointed, or, upon the request of either party, the commission shall appoint, and submit all unresolved issues to, a special master. The special master shall hold hearings in order to define the area of dispute, to determine facts relating to the dispute, and to render a decision on any and all unresolved contract issues.
[2] In City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla. 1983), we noted that the 1968 Florida Constitution and the Municipal Home Rule Powers Act promulgated pursuant to it extend to municipalities the right to exercise all powers for municipal purposes which are not expressly prohibited by the constitution, general or special law, or county charter. See § 166.021(4), Fla. Stat. (1979). Thus whenever a municipality exercises its powers, a two-tiered question should be asked. First, was the action undertaken for a municipal purpose? If so, was that action expressly prohibited by the Constitution, general or special law, or county charter? Id. at 1280. See State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978) (although no specific section in the constitution authorized municipalities to issue revenue bonds, all parties agree municipalities may issue such bonds under their constitutional home rule power). "Municipal purpose" has been broadly defined. 440 So.2d at 1280. As stated in State v. City of Jacksonville, 50 So.2d 532, 535 (Fla. 1951), the concept of municipal purpose includes all activities essential to the health, morals, protection, and welfare of municipalities. None of the parties dispute the city's right to establish a civil service system. Rather, the parties simply dispute the source of that right. Setting up a civil service system for city employees aids in the smooth running of the city and thus increases the efficiency with which the city can render services to its citizens. Clearly this is a valid municipal purpose.
[3] Casselberry, Fla., Ordinance No. 197 (Oct. 26, 1970) (Civil Service Act of the City of Casselberry).
[4] The Florida Legislature clearly contemplated the dual existence of a grievance/arbitration procedure and a civil service appeal procedure when it included the following language in § 447.401: "A career service employee shall have the option of utilizing the civil service appeal procedure or a grievance procedure established under this section, but such employee cannot use both a civil service appeal and a grievance procedure." See Public Employees Relations Comm. v. District School Bd. of Desoto County, 374 So.2d 1005, 1013 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1193 (Fla. 1980).