Mr. Henry Dean Executive Director St. Johns River Water Management District Post Office Box 1429 Palatka, Florida 32078-1429
Dear Mr. Dean:
This is in response to your request for an opinion on substantially the following question:
 DO THE PROVISIONS OF CH. 85-148, LAWS OF FLORIDA, OPERATE TO PRECLUDE THE GOVERNING BOARD OF THE ST. JOHNS WATER MANAGEMENT DISTRICT FROM IMPLEMENTING A WATER HYACINTH FEASIBILITY PROGRAM AS PRESCRIBED IN s. 5(6) THEREOF ON A LAKE OR WATER BODY OTHER THAN LAKE APOPKA?
Chapter 85-148, Laws of Florida, provides in pertinent part as follows:
 Section 1. The Legislature hereby directs the St. Johns River Water Management District, in conjunction with the Department of Environmental Regulation, Game and Fresh Water Fish Commission, Lake and Orange Counties, and the Lake Apopka Restoration Council to initiate a pilot project for Lake Apopka. The purpose of the project is to identify an environmentally sound, economically feasible method for restoring Lake Apopka to a Class III water body.
* * *
 Section 5. The St. Johns River Water Management District governing board shall specify tasks which are to be undertaken by the district, the Department of Environmental Regulation, pertinent local governments, and the Game and Fresh Water Fish Commission in order to initiate the pilot project for Lake Apopka. The governing board shall:
* * *
 (6) Implement and evaluate a program to demonstrate the feasibility of utilizing water hyacinths to extract excessive nitrogen and phosphorus from the sediment and water columns of the lake. (e.s.)
Section 6(2) of Ch. 85-148, supra, further makes an appropriation of "[t]he sum of $1.5 million for fiscal year 1985-1986 from the Aquatic Plant Control Trust Fund within the Department of Natural Resources to implement the provisions outlined in subsection (6) of section 5."
It would appear that s. 5 of Ch. 85-148, supra, contemplates initiation of a pilot project for Lake Apopka, rather than for any other water body. The intent of the Legislature as gleaned from the statute is the law. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983). Legislative intent is determined from the plain meaning of statutory language. St. Petersburg Bank and Trust Co. v. Hamm,414 So.2d 1071 (Fla. 1982); Thayer v. State, 335 So.2d 815 (Fla. 1976). See, 36A C.J.S. For, pp. 946-947, noting that "the term `for' connotes the end with reference to which anything is, acts, serves, or is done; and construed in its most general sense, as indicating that in consideration of which, in view of which, or with reference to which, anything is done or takes place. . . ." "For" has been held equivalent to or synonomous with "in" and "on." Id. Accordingly, it is my view that the legislative direction for the initiation of a pilot project "for Lake Apopka" in s. 5 of Ch. 85-148, supra, operates to preclude the governing board of the St. Johns River Water Management District from implementing a water hyacinth feasibility program as prescribed in s. 5(6) thereof on a lake or water body other than Lake Apopka. See, Orr v. Trask, 464 So.2d 131 (Fla. 1985); Thayer v. State, supra; Ideal Farms Drainage District v. Certain Lands,19 So.2d 234 (Fla. 1944) (express statutory mention of certain things is exclusion of things not mentioned). See also, Alsop v. Pierce,19 So.2d 799 (Fla. 1944) (express statutory direction as to how a thing is to be done is implied prohibition of its being done in any contrary manner).
Additionally, an examination of the legislative history of Ch. 85-148, Laws of Florida, supports this conclusion. According to records of the House of Representatives Committee on Natural Resources, Ch. 85-148, supra, is derived from Committee Substitute for House Bill 251. As originally filed, House Bill 251 would have been expressly applicable to restoration of lakes generally with a mandated "first priority" for funding for restoration of Lake Apopka. When the committee substitute, which made no reference to lakes other than Lake Apopka, was discussed in the April 8, 1985, meeting of the Natural Resources Committee, a staff member who assisted in preparation of the committee substitute testified before the committee that it was "a specific bill addressing a specific lake with a specific appropriation." Tape recording of Natural Resources Committee meeting, April 8, 1985. The legislator who filed the original bill further informed the committee members immediately prior to committee recommendation of the bill's passage that "[i]t's our intent to not spend the money on other water bodies." Id. Finally, when the committee substitute was referred to the House of Representatives Committee on Appropriations, committee members were told immediately prior to favorable recommendation that the bill addressed "pilot project cleanups of Lake Apopka." Tape recording of Appropriations Committee meeting, May 23, 1985. See, Ison v. Zimmerman,372 So.2d 431 (Fla. 1979) (ambiguity in statutory language may be clarified by reference to extrinsic evidence of drafters' intent); McDonald v. Roland, 65 So.2d 12 (Fla. 1953) (courts will consider history of enactment, among other things, as aid in determining Legislature's intent in enacting statute). See also, Piezo Technology v. Smith,413 So.2d 121 (1 D.C.A.Fla., 1982), approved, Smith v. Piezo Technology and Professional Administrators, 427 So.2d 182
(Fla. 1983) (construction of statute based on provision deleted by amendment prior to enactment will be avoided).
Therefore, unless and until legislatively or judicially determined otherwise, it is my opinion that the provisions of Ch. 85-148, Laws of Florida, operate to preclude the governing board of the St. Johns River Water Management District from implementing a water hyacinth feasibility program as prescribed in s. 5(6) thereof on a lake or water body other than Lake Apopka.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General