The Honorable Jim Lowman Sheriff, Escambia County Post Office Box 18770 Pensacola, Florida 32523
Dear Sheriff Lowman:
You have asked for my opinion on substantially the following question:
May the Sheriff of Escambia County lawfully authorize the payment of sick and annual leave to the chief deputy upon the termination of the chief deputy's employment with the sheriff's office?
In sum:
In the absence of any formal personnel policy authorizing such payment, the Sheriff of Escambia County may not authorize payment to the chief deputy sheriff for accumulated annual and sick leave upon the termination of the deputy's employment.
In your efforts to develop personnel rules and regulations applicable to the chief deputy in your office, you have presented the following facts describing the system under which the employees and officers of the previous sheriff operated. You question the authority of the sheriff to act based upon this information.
The independence of the sheriff is preserved with regard to the "selection of personnel, and the hiring, firing, and setting of salaries" (e.s.) by virtue of s. 30.53, F.S., provided, however, that
nothing herein contained shall restrict the establishment or operation of any civil service system or civil service board created pursuant to s. 14, Art. III, of the Constitution of Florida, provided, further that nothing contained in ss.30.48-30.53 shall be construed to alter, modify or change in any manner any civil service system or board, state or local, now in existence or hereafter established.[1]
While a civil service has been created by special act for Escambia County, the chief deputy sheriff appears to be among those specifically excluded from coverage under that system.[2] Thus, the sheriff would appear to still retain his independence regarding the hiring, firing and setting of salary of his chief deputy.
The sheriff is required to submit a yearly budget to the board of county commissioners itemizing expenditures as follows: salary of the sheriff; salaries of deputies and assistants; expenses other than salaries; equipment; investigations; and reserve for contingencies.[3] The board of county commissioners may only increase or reduce by lump sum the money allocated to any of the six budget items; it is not empowered to dictate how the funds allocated by any one item can be used. As stated by The Supreme Court of Florida in Weitzenfeld v. Dierks,[4] "the internal operation of the sheriff's office and the allocation of appropriated monies within the six items of the budget is a function which belongs uniquely to the sheriff as chief law enforcement officer of the county." To hold otherwise would harm the integrity of a constitutional office and would violate the precept established by s. 30.53, F.S., which preserves the independence of the sheriff.[5]
This office has been advised that sheriffs, under the authority of s. 30.53, F.S., and in the absence of a civil service system applicable to their deputy sheriffs, have historically established policies for annual and sick leave for such deputies and the payment of such leave upon resignation, retirement or termination of such officers. Such a policy does not appear to have been adopted by the former sheriff,[6] and it is in an attempt to develop such a policy that you have contacted this office.
You state that there was formerly no line item in the budget for payment of the chief deputy's accrued leave. If, however, a sheriff has an established policy for the accrual and payment of annual and sick leave upon termination of employment for his deputies, it would not appear to be necessary for there to be a line item in the budget for each fiscal year providing for the payment of such leave should such a deputy leave during that fiscal year. A reserve for contingencies is one item in the budget which, reserve or any part thereof, may be transferred to any of the budget appropriations in the discretion of the sheriff. Such a reserve would appear to be available for payment of accrued annual and sick leave if needed. The sheriff, of course, may not authorize payments in excess of the budget.[7]
In addition, I would note that all salaries paid are required to be supported by payrolls and all expenses paid must be supported by approved bills.[8] The sheriff is further required to keep necessary budget accounts and records. Further, s. 119.05, F.S., requires that whoever has custody of any public records shall, at the expiration of his term of office, deliver such records to his successor. From the information contained in your letter, there appears to be some question as to whether, in the past, sufficient records have existed to support the payment of such leave, i.e., no independent formal record or accounting of accrued annual leave was made to support the leave now being claimed.
Moreover, a sheriff would appear to be prohibited from retroactively authorizing the accrual of leave and the payment of such leave. Section 215.425, F.S., prohibits extra compensation being made to any officer, agent, employee, or contractor after the service has been rendered.[9] The purpose of this provision is to carry out a basic and fundamental principle that public funds may be used only for a public purpose and it is generally contrary to that policy to use public funds to award extra compensation for work which has already been performed for an agreed upon wage.[10]
Retroactive compensation, lump sum allowances or other forms of compensation not provided by law or contract are prohibited by s. 125.425, F.S., unless otherwise specifically authorized by state statute.[11] Extra compensation generally refers to an additional payment for services performed or compensation over and above that fixed by contract or by law when the services are performed. Based on the above discussion, it is my opinion that, in the absence of a formal personnel policy adopted by the Sheriff of Escambia County establishing the right of a chief deputy sheriff to payment for sick and annual leave upon termination of employment, such a payment is unauthorized, may be illegal, and should be brought to the attention of the State Attorney for review.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 14, Art. III, State Const., which provides in part that "[b]y law . . . there may be created civil service systems and boards for county, district or municipal employees and for such offices thereof as are not elected or appointed by the governor[.]" See also, Ison v. Zimmerman, 372 So.2d 431 (Fla. 1979), which recognizes that deputy sheriffs, although officers, may be covered by a civil service system created pursuant to general or special law.
[2] See, e.g., s. 7.1(n), of the civil service act, as amended by s. 1, Ch. 83-405, Laws of Florida.
[3] Section 30.49, F.S.
[4] 312 So.2d 194, 196 (Fla. 1975).
[5] Id.
[6] While no formal policy appears to have been adopted, a memorandum from the former sheriff to Lt. David Sanderson — Resource Management, dated February 21, 1991, states Chief Deputy Ross had earned 480 hours of annual leave and 240 hours of sick leave as of January 1, 1991. The memorandum further states that as of January 1, 1991, Chief Deputy Ross would earn 20 hours a month of annual leave and 10 hours a month of sick leave. While the memorandum does not specify if any or all of such leave will be paid upon the officer's retirement, termination, or resignation, it does state that there is no limit on the amount of hours accrued for either annual or sick leave.
[7] See, s. 30.49(10), F.S. (if emergency should arise by which sheriff is unable to perform his duties without expenditure of larger amounts than those provided in the budget, he may apply to the board of county commissioners for the appropriation of additional amounts).
[8] Section 30.50(2), F.S. A limited exception for the requirement that all expenses paid be supported by approved bills exists for expenses of an investigation. Cf., s. 116.07, F.S., stating in part that all sheriffs shall keep books of account and of record in accordance with forms to be approved by the Auditor General, except as otherwise provided by law.
[9] Section 215.425, F.S., formerly s. 11, Art. XVI, State Const. 1885, was converted to statutory law by s. 10, Art. XII, State Const. 1968.
[10] See, e.g., AGO 91-37.
[11] See, e.g., s. 125.01(1)(bb) and 166.021(7), F.S. (1992 Supp.), which authorize the governing body of a county or a municipality to provide for an extra compensation program, including a lump-sum bonus payment program, to reward outstanding employees whose performance exceed standards, provided that bonus payment is not included in the employee's base rate of pay and is not carried forward in subsequent years.