Major General Ronald O. Harrison Department of Military Affairs Office of the Adjutant General Post Office Box 1008 St. Augustine, Florida 32085-1008
Dear Major General Harrison:
You ask substantially the following question:
Is the state or a political subdivision thereof required under section 250.48 or section 115.07, Florida Statutes, to pay its officers and employees their full government salary, while on authorized military leaves of absence, or may it reimburse such officers and employees only for the difference between their government salary and their military pay while on military leave?
In sum:
The state or a political subdivision thereof is required by section 250.48 and section 115.07, Florida Statutes, to pay its officers and employees who are on authorized military leave their full government salary and not merely the difference between their government salary and their military pay for the time periods prescribed therein.
Section 250.48, Florida Statutes, states:
"Any officer or employee of the state, of any county of the state, or of any municipality or political subdivision of the state who is a member of the Florida National Guard is entitled to leave of absence from his or her respective duties, without loss of pay, time, or efficiency rating, on all days during which the officer or employee is engaged in active state duty, pursuant to s. 250.28
or s. 252.36. However, a leave of absence without loss of pay, granted under the provisions of this section, may not exceed 30 days at any one time." (e.s.)
Section 250.48, Florida Statutes, pertains to state-ordered duty under Chapter 250, Florida Statutes.[1] For purposes of Chapter 250, "[t]he troops ordered into the service of the state for the enforcement of the law, the preservation of the peace, or for the security of the rights or lives of citizens, protection of property, or ceremonies shall be deemed to be in active service."[2]
Thus, National Guardsmen who are officers and employees of the state or its political subdivisions are entitled to military leave from their governmental duties as a matter of right for up to 30 days at any one time without loss of pay, time or efficiency rating.
Similar language of entitlement is contained in section 115.07(1), Florida Statutes, which provides:
"All officers or employees of the state, of the several counties of the state, and of the municipalities or political subdivisions of the state who are commissioned reserve officers or reserve enlisted personnel in the United States military or naval service or members of the National Guard are entitled to leaves of absence from their respective duties, without loss of vacation leave, pay, time, or efficiency rating, on all days during which they are engaged in training ordered under the provisions of the United States military or naval training regulations for such personnel when assigned to active or inactive duty." (e.s.)
Subsection (2) of section 115.07, Florida Statutes, provides that "[l]eaves of absence granted as a matter of legal right under the provisions of this section shall not exceed 17 working days in any one annual period." Administrative leaves of absence for additional or longer periods shall be without pay.
While section 250.48 and section 115.07, Florida Statutes, have separate areas of operation, they relate to the same subject,i.e., military leave, and should therefore be read in such a manner as to produce a harmonious and consistent effect.[3] Each states that personnel on authorized military leave shall be entitled to leave without loss of "pay, time, or efficiency rating."
The language regarding pay is phrased in mandatory terms and does not provide or authorize any alternatives.[4] A legislative direction as to how a thing is to be done operates as a prohibition against it being done in any other way.[5] While counties and municipalities possess home rule powers,[6] they may not act inconsistent with or in conflict with the provisions of state law.[7]
My predecessors in office, in considering this issue, have consistently stated that the language "without loss of pay" in these statutes requires the state and its political subdivisions to pay their officers and employees their full salaries while on military leave, regardless of any other compensation from the military or other source.[8] As this office concluded in Attorney General Opinion 78-81,
"If the municipality were to reduce or offset the compensation paid to its officers or employees on military leave under s.250.48, F.S., by the amount of their military pay, such officers or employees would suffer a `loss of pay' which the statute prohibits. The statute is mandatory . . . and allows no discretion or power on the part of a municipality to depart from its operation. . . . [M]unicipalities are prohibited from reducing or offsetting the compensation paid to their officers or employees on authorized military leave under s. 250.48, F.S., in any manner whatsoever."
While the statutes have been amended since that opinion was rendered, such amendments have not affected the requirement that government officers and employees on authorized military leave under the terms of section 250.48 or section 115.07, Florida Statutes, shall suffer no "loss of pay."
Accordingly, I am of the opinion that the state or a political subdivision thereof is required by section 250.48 and section115.07, Florida Statutes, to pay its officers and employees who are on authorized military leave their full government salary and not merely the difference between their government salary and their military pay.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, Ops. Att'y Gen. Fla. 86-22 (1986) and 74-26 (1974).
[2] See, s. 250.27, Fla. Stat., defining "active service" and also providing that "[o]fficers and enlisted personnel employed under orders of the Governor in recruiting; making tours of instruction; inspection of troops, armories, storehouses, campsites, rifle ranges, and military property; sitting on general or special courts-martial, boards of examination, courts of inquiry, or boards of officers; or making and assisting in the physical examinations, shall be deemed to be in active service when it is so specified in orders."
[3] Mann v. Goodyear Tire and Rubber Company, 300 So.2d 666
(Fla. 1974); Ideal Farms Drainage District v. Certain Lands,19 So.2d 234 (Fla. 1944).
[4] See, Drury v. Harding, 461 So.2d 104 (Fla. 1984) (word "shall" is normally used in a statute to connote mandatory requirement); Neal v. Bryant, 149 So.2d 529 (Fla. 1962); Hollowayv. State, 342 So.2d 966 (Fla. 1977). And see, Fixel v. Clevenger,285 So.2d 687 (Fla. 3d DCA 1973) (Word "may" when given its ordinary meaning denotes permissive term rather than mandatory connotation of word "shall").
[5] See, e.g., Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944) (When the controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[6] See, Ch. 166, Fla. Stat., implementing the broad home rule powers afforded municipalities under Art. VIII, s. 2(b), Fla. Const.; and Speer v. Olson, 367 So.2d 207, 211 (Fla. 1978) (first sentence of s. 125.01(1), Fla. Stat., grants to the governing body of a county the full power to carry on county government, and unless the Legislature has preempted a particular subject, county governing body has full authority to act through the exercise of home rule power).
[7] See, e.g., City of Miami Beach v. Rocio Corporation,404 So.2d 1066 (Fla. 3d DCA 1981), pet. for rev. den., 408 So.2d 1092
(Fla. 1981) (while concurrent legislation may be enacted by both state and local governments in areas not preempted by the state, such concurrent legislation enacted by municipalities may not conflict with state law); Rinzler v. Carson, 262 So.2d 661, 662
(Fla. 1972) (municipality cannot forbid what the Legislature has authorized or required, nor may it authorize what the Legislature has forbidden). And see, Thomas v. State, 614 So.2d 468, 470
(Fla. 1993) (municipal ordinances are inferior to state laws and must not conflict with any controlling provision of a statute);City of Casselberry v. Orange County Police BenevolentAssociation, 482 So.2d 336 (Fla. 1986) (if specific conflicts arise, state statute will prevail); City of Hialeah v. Martinez,402 So.2d 602 (Fla. 3d DCA 1981), pet. for rev. dismissed,411 So.2d 380 (Fla. 1981); Scavella v. Fernandez, 371 So.2d 535
(Fla. 3d DCA 1979) (county ordinance requiring claims against county be filed within 60 days was in conflict with and superseded by state statute allowing three-year notice period for filing).
[8] See, Op. Att'y Gen. Fla. 74-189 (1974); Op. Att'y Gen. Fla. 53-322 (1953), p. 124; Op. Att'y Gen. Fla. 51-273 (1951), p. 212; Op. Att'y Gen. Fla. 48-13 (1948), p. 359; and Op. Att'y Gen. Fla. 47-152 (1947), p. 129.