609 So.2d 31 (1992)
FRATERNAL ORDER OF POLICE, MIAMI LODGE 20, Petitioner,
v.
CITY OF MIAMI, Respondent.
No. 77394.
Supreme Court of Florida.
November 19, 1992.
Robert D. Klausner of Klausner & Cohen, P.A., Hollywood, for petitioner.
Peter J. Hurtgen of Morgan, Lewis & Bockius, Miami, for respondent.
Mark R. Brown, Associate Professor of Law, Stetson University, College of Law, St. Petersburg, amicus curiae for The American Civil Liberties Union Foundation of Florida, Inc.
Lorene C. Powell, Asst. Gen. Counsel, Tallahassee, amicus curiae for Florida Educ. Ass'n/United.
Gene "Hal" Johnson, Tallahassee, amicus curiae for The Florida Police Benev. Ass'n.
Jane C. Hayman, Deputy Gen. Counsel, Tallahassee, amicus curiae for Florida League of Cities, Inc.
George N. Aylesworth and Thomas Guilfoyle, Metro-Dade Police Dept., Police Legal Bureau, Miami, amicus curiae for Florida Sheriff's Ass'n, Florida Police Chief's Ass'n, Dade County Ass'n of Chiefs of Police, and Florida Ass'n of Police Attys.
Terence G. Connor and Wayne D. Rutman of Morgan, Lewis & Bockius, Miami, amicus curiae for Florida Public Employer Labor Relations Ass'n.
OVERTON, Justice.
The Fraternal Order of Police, Miami Lodge 20, petitions for review of City of Miami v. F.O.P., Miami Lodge 20, 571 So.2d 1309 (Fla. 3d DCA 1990), in which the en banc court held that, where there are complaints of drug use by specifically identified police officers, the requirement of *32 drug testing of those officers was a matter of management prerogative and not a subject of mandatory collective bargaining. The district court then certified the following question as one of great public importance.
AS PRESENTED BY THE FACTS IN THIS CASE, IS THE COMPULSORY DRUG TESTING OF POLICE OFFICERS A MANDATORY SUBJECT OF COLLECTIVE BARGAINING OR, IN THE ALTERNATIVE, MAY A GOVERNMENTAL ENTITY REQUIRE ITS POLICE OFFICERS TO SUBMIT TO DRUG TESTING WITHOUT HAVING FIRST ENTERED INTO COLLECTIVE BARGAINING REGARDING THE SUBJECT?
Id. at 1333. We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and approve the district court's holding. We conclude that, although mandatory collective bargaining is necessary for random drug testing absent express legislation, such drug testing is permissible and within the management prerogative when there is some evidence of drug involvement by specific officers. To hold otherwise would adversely affect public safety, given the responsibility and discretionary authority of police officers. As a result, we find no unfair labor practice.
The relevant facts reflect that, in June, 1985, two separate incidents occurred involving City of Miami police officers, which resulted in their being required, as a condition of continued employment, to submit to drug testing to determine the presence of drugs in their systems. The first incident arose after an off-duty police officer was allegedly seen taking cocaine in a restaurant restroom. As a result, his commanding officer ordered him to submit to chemical testing. The police officer declined to take the test and was terminated from employment for refusal to obey a direct order. Subsequently, that officer submitted to a test administered by his personal physician. The test was not accepted by the City and has not been submitted as part of the record in this proceeding.
The second incident occurred when two officers, who had made a number of arrests in a high-drug area of the City, were accused in an anonymous telephone call of purchasing marijuana from an individual at a specific location. The evidence reflected that the officers and their car were in that location at approximately the time of the alleged buy. These two officers were also directed to undergo drug testing. They submitted to the drug tests under protest upon the advice of the union. The tests proved negative and the officers suffered no disciplinary action.
The union representing the officers, the Fraternal Order of Police, Miami Lodge 20 (FOP), filed unfair labor practice charges against the City in a complaint before the Public Employees Relations Commission. The union sought injunctive relief, claiming that the City had failed to bargain and had interfered with the employees' rights. The hearing officer of the Public Employees Relations Commission concluded that compulsory drug testing, as a condition of the officers' continued employment, was a subject of mandatory collective bargaining under chapter 447, Florida Statutes (1983). The hearing officer, however, concluded that, in these circumstances, the City had not committed an unfair labor practice because, in his view, the union had waived its right to bargain about drug testing when it agreed, in the management clause of the collective bargaining agreement, that the City would have the right "to establish, implement and maintain an effective internal security program." The hearing officer noted that this is not a customary or usual provision in the standard management clause.
On appeal to the Public Employees Relations Commission, the Commission rendered a majority opinion which: (1) concluded that drug testing was the subject of mandatory collective bargaining; (2) contrary to the hearing officer, found that the union had not clearly waived its right to bargain about drug testing, finding the provision about implementing an internal security program to be ambiguous; and (3) found that the City had committed an unfair labor practice proscribed by section *33 447.501(1)(a), (c), Florida Statutes (1983). The Commission explained in its order that its "decision ... does not prohibit a public employer from requiring its employees to submit involuntarily to chemical testing as a condition of continued employment. It only requires that this condition of employment be bargained before being implemented." Fraternal Order of Police, Miami Lodge 20, v. City of Miami, No. CA-85-041 (Pub.Empls.Rels.Comm'n Dec. 11, 1985) (order No. 85U-287 at 2). The Commission ordered the City to cease and desist from unilaterally requiring its law enforcement employees to submit to chemical testing and directed the City to reinstate the three officers to the status they enjoyed prior to June of 1985. The dissenting commissioner "would find the urinalysis ordered under the facts of this case to be a management prerogative since the City's interest in the integrity of its law enforcement personnel is overwhelming." Id. at 18.
This decision was appealed to the Third District Court of Appeal which originally, in a panel decision, upheld the Commission's decision. The district court then accepted the cause for en banc consideration and entered a majority opinion vacating the panel decision, finding, in these circumstances, that "drug testing of police officers falls within the management prerogative of the City and, thus, is not a subject of mandatory collective bargaining." City of Miami, 571 So.2d at 1320. The panel opinion by Judge Pearson and the en banc opinion by Judge Levy thoroughly address both sides of this issue.
Each of the quasi-judicial and judicial entities in this cause have noted that this is a case of first impression. The issue we must determine is whether compulsory drug testing of police officers is a mandatory subject of collective bargaining under circumstances where there is a suspicion of misconduct by a particular individual or individuals. Whether the City of Miami was guilty of unfair labor practices depends upon whether drug testing in these circumstances is a subject of mandatory collective bargaining.
The Florida Constitution, article I, section 6, entitled "Right to work," provides as follows:
The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
Section 447.309(1), Florida Statutes (1983), provides, in pertinent part, as follows:
[T]he bargaining agent for the organization and the chief executive officer of the appropriate public employer or employers, jointly, shall bargain collectively in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit. The chief executive officer or his representative and the bargaining agent or its representative shall meet at reasonable times and bargain in good faith.
Generally, a public employer may act unilaterally if the conduct or action does not fall within the statutory definition or if it is considered a permissive subject because it falls within the managerial prerogative. City of Miami, 571 So.2d at 1321. While there is no precise test or definition to determine what terms must mandatorily be collectively bargained for and which are permissive, several cases have interpreted this chapter to mean that a public employer must bargain those terms "affecting, or impacting upon, employment or a condition of employment." Board of County Commissioners v. Central Fla. Fire Fighters Ass'n, 467 So.2d 1023, 1026 (Fla. 5th DCA 1985).[1] However, as the Third District Court stated in this case:

*34 No Florida case has adequately discussed the analysis to be utilized in determining whether a subject must be collectively bargained when that subject both directly relates to employment security or conditions of employment and also directly relates to the functioning of an enterprise... . Where, as here, we are dealing with a subject which is arguably both a managerial prerogative and a "term or condition of employment," we hold that a balancing test should apply to determine which characteristic predominates.
City of Miami, 571 So.2d at 1323. The subject of drug testing has both the characteristics of being within the management prerogative and being a term or condition of employment. We agree with the district court's analysis that, when this occurs, a balancing test must be applied.
We note that the issue in this case is narrow because it involves public safety and sworn police officers, who carry firearms and exercise considerable discretion in enforcing the law. In the instant case, the officers were allegedly seen illegally using or buying drugs. The district court expressed the public policy concerns of this activity in this manner:
It must be stressed that this case is not simply one which involves the average "public employee." Rather, we are dealing with a specific category of public employee  that of police officer  which is entrusted with the public safety and empowered with enforcing the law. Because police officers are responsible for the lives and safety of the citizenry, they occupy a position in which the public has a right to have absolute trust. The credibility of police officers is thus central to the operation of the police force as an enterprise... .
We further note that a drug impaired police officer not only poses the danger of failing to protect the public, he or she could in fact, endanger it. The reality of police work is that police officers come into frequent contact with illegal substances in the course of their duties. Thus, both the sources of temptation and the consequences of drug usage are greater for police officers than for other types of employees. The problems caused by, and the dangers created by police officers who are under the influence of illicit drugs are rather obvious. Police officers are empowered to make arrests and, under appropriate circumstances, use deadly force. Impairment of judgment induced by illegal drug usage presents the potential, if not strong probability, that the affected police officer may become involved in doing things which are contrary to the purposes of legitimate police work. The list of harmful, and possibly tragic, consequences that could result from the illicit use of drugs is potentially endless. Such a list would include, at the very least, the improper use of the officer's firearm, wrongful arrests made without legal justification (due to the officer's impaired judgment), the leaking of confidential information, the improper disclosure of confidential informants to criminals, being susceptible to bribery or blackmail, as well as the failure or inability of the impaired officer to properly and expeditiously provide "back-up" to his or her fellow officer.
Id. at 1324-25. We accept the district court's analysis and agree that the investigative clause in the management prerogative provision of the collective bargaining agreement expressly recognizes the need for the public employer of sworn police officers to conduct internal investigations for the purpose of ensuring the integrity of the police department and the protection of the public. Further, we find that a public employer does have the authority to require such testing under the management prerogative provision, even if the investigative internal security clause had been omitted, under circumstances where specific officers had been identified as having allegedly committed offenses involving drugs. We find that the facts as presented in the instant case clearly affect the integrity of the police and their ability to protect the *35 public. Since public safety and protection are the City of Miami's direct responsibility, circumstances that affect these responsibilities are management prerogatives. Public safety and protection cannot wait for a bargaining session under these circumstances. As expressed by the district court, the drug testing of identified police officers who had allegedly committed drug offenses is "a critical managerial decision which fundamentally impacts upon the functioning of" the police force and thus is excluded from the range of subjects which must be mandatorily bargained under section 447.309, Florida Statutes (1983). Id. at 1322. We fully agree. We would expect that such drug testing, under these circumstances, would be performed in accredited medical facilities in accordance with standardized and accepted medical procedures. Due process requires the subject police officers to have an opportunity to challenge the validity of the procedure and tests utilized.
We note that there have been two recent United States Supreme Court decisions relating to the testing of public employees involved with public safety. In Skinner v. Railway Labor Executives' Association, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the Court upheld a federal railroad administration regulation which required all employees involved in railroad accidents to undergo toxicological testing. The Court in that instance held that the government's compelling interest in public safety outweighed the individual privacy concerns of the employee. Furthermore, in National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the Court upheld a United States Customs Service testing program which required employees being promoted or transferred to sensitive positions within the department to undergo urinalysis. We recognize that these decisions addressed only Fourth and Fourteenth Amendment claims and did not discuss collective bargaining. We note, however, that these decisions did emphasize the importance of public safety.
We emphasize that our holding allowing testing in this instance does not mean we are holding that public employers of public safety personnel have the managerial prerogative to require random drug testing of all public safety personnel. That type of testing does, in our view, require collective bargaining unless the legislature addresses it specifically. Our decision allowing testing in this circumstance is narrow and is based on an overriding need to protect the public.
For the reasons expressed, we approve the district court's en banc decision that compulsory drug testing is a managerial prerogative under these limited circumstances and its finding that the City did not commit any unfair labor practices under section 447.501(1)(a), (c), Florida Statutes (1983).
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs specially with an opinion.
KOGAN, Justice, specially concurring.
As a matter of policy, public safety cannot be the mandatory subject of collective bargaining. Unlike private employees, public safety workers hold unique positions, their performance directly affects the welfare of others, and they thus cannot be given the unqualified right to collectively bargain regarding mandatory drug testing. I believe, for example, that a local school board can implement a policy requiring drug testing of a bus driver who has shown clear signs of drug-related impairment whether or not the applicable union contract so provides, although the details governing testing clearly would be a permissible subject for negotiation. For this reason, I concur in the result reached by the majority, at least to the extent it answers this narrow question in the abstract.
However, I also note that compulsory drug-testing of governmental safety workers raises distinct problems under the Fourth Amendment, Florida's privacy *36 amendment,[2] and in some cases due process.[3] I am greatly troubled by the fact that there were no written policies regarding mandatory drug testing in this case, whether embodied in a policy of the appropriate legislative unit (the Miami City Commission) or a collective bargaining agreement.
The lack of a written policy effectively delegated unbridled discretion to agents in the field. To my mind, mandatory workplace drug testing is allowable, but also is subject to definite constitutional limits that may well have been exceeded here. Because of its unusual procedural posture, the case before us today does not decide or turn on what those limits may be. We are only asked whether article I, section 6 of the Florida Constitution prohibits mandatory drug testing of public safety workers absent a negotiated collective bargaining agreement to that effect. I conclude it does not, although I have grave doubts whether the events in this case would pass muster under other constitutional provisions.
NOTES
[1] See also City of New Port Richey v. Hillsborough County Police Benevolent Ass'n, Inc., 505 So.2d 1096 (Fla. 2d DCA), review denied, 518 So.2d 1275 (Fla. 1987); City of Orlando v. Florida Pub. Employees Relations Comm'n, 435 So.2d 275 (Fla. 5th DCA 1983); Orange County Police Benevolent Ass'n v. City of Casselberry, 457 So.2d 1125 (Fla. 1st DCA 1984), aff'd in part, rev'd in part on other grounds, 482 So.2d 336 (Fla. 1986); Public Empls. Rels. Comm'n v. District Sch. Bd., 374 So.2d 1005 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1193 (Fla. 1980).
[2] Art. I, § 23, Fla. Const.
[3] Art. I, § 9, Fla. Const.