**CORPUS CHRISTI FIRE FIGHTERS ASSOCIATION, Appellant,**

v.

**THE CITY OF CORPUS CHRISTI, Appellee.**

No. 13–98–309–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 16, 1999.

Rehearing Overruled Feb. 3, 2000.

B. Craig Deats, Jenkins & Deats, P.C., Austin, Rose Vela, Barger & Moss, Corpus Christi, for Appellant.

Carol Estes Bray, Asst. City Atty., Legal Dept., James R. Bray, Jr., City Atty., Corpus Christi, for Appellee.

Before Chief Justice SEERDEN, Justices DORSEY, and CHAVEZ.

## OPINION

Opinion by Justice CHAVEZ.

This cross-appeal concerns the interpretation of the Fire and Police Employee Relations Act (FPERA)[1] as it applies to a collective bargaining agreement between the City of Corpus Christi and the Corpus Christi Fire Fighters Association. At issue is whether the City violated the provisions of the bargaining agreement and the FPERA by unilaterally implementing revised grooming standards, and revisions to the City's Vehicle Accident Review Board procedural rules. Because we find that neither constitutes a condition of employment, we affirm in part and reverse in part.

### BACKGROUND

Under the FPERA, the City is required to bargain collectively with the fire fighters and police officers of Corpus Christi "regarding compensation, hours, and other conditions of employment...." TEX. LOC. GOV'T CODE ANN. § 174.105 (Vernon 1999). For this purpose, the Corpus Christi Fire Fighters Association was created as the exclusive bargaining agent for a bargaining unit that consists of each sworn, certified fire fighter in the City's Fire Department, excluding the Fire Chief. Since 1976, the City and the Association have entered into a series of collective bargaining agreements with each other. The current agreement became effective July 2, 1997, and the agreement immediately prior became effective in August 1993.

---

1. TEX. LOC. GOV'T CODE ANN. § 174.001 et seq. (Vernon 1999).

With the collective bargaining agreement in place under the FPERA, a dispute arose when the City unilaterally revised existing grooming standards for the fire fighters and modified policy rules pertaining to all city employees who drove city-owned vehicles. The Association opposed the implementation of the revised standards and policies, contending they were mandatory subjects for bargaining because they qualified as conditions of employment.

A review of these two topics reveals that grooming standards were initially implemented for the fire department in 1986, and the standards were revised in 1991. Prior to December 1994, Fire Chief Juan Adame decided to revise the 1991 policy. He formed an employee committee composed of two fire fighters, three fire captains, and one district chief for the purpose of creating a questionnaire and surveying the fire fighters. Based on survey results, revised grooming standards were presented to Chief Adame and thereafter became effective on January 1, 1995. Adame did not consult with the Association about forming the employee committee, issuing the questionnaire, or revising the grooming standards. The City refused to rescind implementation of the revised grooming standards.

The Vehicle Accident Review Board (VARB) was created by the City's Risk Management Department for the purpose of reviewing auto accidents involving city vehicles. In 1996, City Manager Juan Garza implemented revisions to the City's VARB procedural rules. Under the previous and revised VARB rules, a point accrual system exists that is designed to cause suspension of driving privileges once a certain amount of points has accrued during a given length of time. The primary difference in the new rules allowed for points to be accrued based on an employee's off-duty driving violations as well as for on-duty driving violations. Other significant revisions were a provision for a compulsory mental or physical exam if the City suspects the fire fighter is unable to safely drive, and an annual review of a fire fighter's driving record with the Texas Department of Public Safety.

When the City refused to change its position on the new grooming standards and the VARB rules, the Association brought suit. In its petition, the Association claimed the City violated the collective bargaining agreement as well as its statutory duty to bargain in good faith under section 174.105 of the local government code by: (1) unilaterally implementing changes in the grooming policy; (2) forming an employee committee to survey fire fighters instead of seeking such information through the Association; and (3) by unilaterally implementing changes to the VARB procedural rules. The Association also requested attorney fees and costs under the provisions of the Declaratory Judgment Act.[2]

With respect to the first claim, the trial court granted a partial summary judgment in favor of the City. Of the remaining claims tried before the court, the court held the City did not violate its statutory duty to bargain in good faith by forming an employee committee, and it denied the Association's request for attorney fees. It did, however, hold that the VARB procedural rules affected the fire fighters' conditions of employment, and therefore, the City was enjoined from implementing the VARB rules in its fire department. Both parties have appealed from the rulings adverse to their positions, and acknowledge that this is a case of first impression under the FPERA.

SUMMARY JUDGMENT

The standard of review in a summary judgment case is well-established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009    (Vernon 1997).

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

As to whether the trial court erred in granting the City's motion for summary judgment pertaining to revised grooming standards, the material facts are generally undisputed, leaving only the issue of whether grooming standards constitute a condition of employment as a matter of law, thereby making it a mandatory subject of bargaining.[3]

The FPERA imposes a duty on the City and the Association to bargain collectively and in good faith regarding "compensation, hours, and other conditions of employment." TEX. LOC. GOV'T CODE ANN. § 174.105 (Vernon 1999). Appellant argues that the City's actions violated this statutory provision as well as the "Prevailing Rights" clause in the 1993 collective bargaining agreement which reads:

> All rights, privileges, and working conditions enjoyed by the employees at the present time, which are not specifically mentioned in this agreement, shall remain in full force and effect and shall not be diminished in any manner during the term of this agreement, unless by amendment by mutual consent of the parties.

The statutory duty imposed by the FPERA is the same duty imposed by the National Labor Relations Act (NLRA) on private sector employers and labor units. *See* 29 U.S.C. § 158(d) (1998). The subjects included within these categories are referred to as mandatory subjects of bargaining preventing either the employer or the employee from taking unilateral action on the subject.[4] *Fibreboard Paper Products Corp. v. National Labor Relations Bd.,* 379 U.S. 203, 210, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).[5]

In cases arising under the NLRA, the Supreme Court has recognized on several occasions that Congress deliberately left the terms "wages, hours, and other terms of conditions of employment," undefined in order to reflect industry standards, the social and political climate at any given time, the needs of employers and employees, and many related factors. *First National Maintenance Corp. v. N.L.R.B.,* 452 U.S. 666, 675 n. 14, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981); *see Ford Motor Co. v. N.L.R.B.,* 441 U.S. 488, 495–96 n. 8, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979); *Fibreboard,* 379 U.S. at 210, 85 S.Ct. 398. With respect to the limitations on what should be considered mandatory subjects of bargaining, the Court has stated in broad terms that "the limitation includes only issues that settle an aspect of the relationship between the employer and the employees." *Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 178, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971).

Under state employment laws related to public employees, a recognized limitation on mandatory bargaining is the concept of

---

3. Appellant has cited some federal cases for the proposition that dress codes for employees constitute a mandatory subject of bargaining. We, however, do not find these cases to be dispositive, as they are based on different facts and circumstances.

4. In contrast, permissive subjects of bargaining are those upon which the employer is empowered to bargain, although not required to do so.

5. As to the origin of section 174.105, the Association's response to the City's motion for summary judgment contained the affidavit of Dr. Charles Morris. Dr. Morris stated that he authored the FPERA, and that he incorporated the language of the NLRA into the FPERA to insure the duty to bargain in good faith under the FPERA would be identical to that imposed by the NLRA.

management prerogative, which involves issues of policy that should be exclusively reserved to a government's discretion.[6] An example is Minnesota's Public Employment Labor Relations Act (PELRA) which defines "terms and conditions of employment" as hours, benefits, and the employer's personnel policies affecting the working conditions of the employee. Minn.Stat. § 179A.03 subd. 2 (1998).

The statute was applied in *Law Enforcement Labor Services, Inc. v. County of Hennepin,* 449 N.W.2d 725 (Minn.1990), where the Supreme Court of Minnesota stated that its state courts have traditionally given a broad interpretation to the requirement that an employer meet and negotiate in good faith regarding terms and conditions of employment, but recognized that there may be limitations "if the matter in dispute involves an inherent managerial policy." *Id.* at 727. Similar to the present case, the issue in *Hennepin* dealt with the county sheriff's unilateral implementation of a revised personnel grooming policy and the union's objection to the policy based on its claim that it was not given an opportunity to negotiate on the matter. *Id.* at 726. The court found the modified grooming policy did have some impact on the working conditions of the union members, but nevertheless held that it was not a subject of mandatory bargaining because the policy was designed to foster and enhance the respect and confidence of the public, and to establish a departmental public image of neatness and professionalism. *Id.* at 729–30. The court held these concerns involved a matter of inherent managerial policy despite "some impact" on working conditions. *Id.*

Likewise, other jurisdictions have provided examples of how management prerogative has been used to limit the scope of mandatory bargaining. Under Oregon's Public Employees Collective Bargaining Act, only "employment relations" are mandatory subjects of bargaining. ORS 243.650(7)(a) (1997). Additionally, the statute provides that employment relations "shall not include subjects which ... have a greater impact on management's prerogative than on employee wages, hours, or other terms and conditions of employment." ORS 243.650(7)(c) (1997). The Oregon Supreme Court has applied this balancing test to determine whether an issue is subject to mandatory bargaining. *See e.g., Portland Fire Fighters Ass'n v. City of Portland,* 305 Or. 275, 751 P.2d 770 (1988) (city requirement to bargain over vacation provision); *Springfield Educ. Ass'n v. Springfield School Dist.,* 290 Or. 217, 621 P.2d 547 (1980) (school district requirement to bargain over proposed provisions on teacher evaluations).

In *Fraternal Order of Police, Miami Lodge 20 v. City of Miami,* 609 So.2d 31 (Fla.1992), the Florida Supreme Court applied a similar balancing test to determine whether random drug testing of Miami police officers came within the purview of management prerogative or was instead a mandatory subject of bargaining. The court held that the city's concerns for public safety and protection gave it the authority to require the drug testing despite the subject being characterized as both a managerial prerogative and a condition of employment. *Id.* at 34.

■ No Texas case has discussed the analysis to be used in determining whether a subject must be collectively bargained when that subject arguably relates to both conditions of employment and the City's right to administer departmental rules and policies. Because "conditions of employment" is obviously a catchall phrase into which almost any proposal may fall, we hold that a balancing test should be ap-

---

6. *See e.g., Frackville Borough Police Dept. v. Pennsylvania Labor Relations Bd.,* 701 A.2d 632 (Pa.Commw.Ct.1997) (selection of manager for police pension fund was within management prerogative exception); *Billerica v. International Ass'n of Firefighters,* 415 Mass. 692, 615 N.E.2d 564 (1993) (minimum staffing provision was a nondelegable right of management that could not be abandoned by agreement).

plied and a proposed subject constitutes a condition of employment under the FPERA only if it has a greater effect on working conditions than on management prerogatives.

■ In the present case, the new grooming standards altered the requirements for mustaches, regulated the use of wigs and toupees, specified in greater detail the acceptable requirements for male and female hairstyles, and for the first time, established standards for the length of fingernails and the use of jewelry. After thoroughly reviewing the new policy, we find it bears a greater effect on management prerogatives than on working conditions. The prior grooming standard and the revisions at issue have been designed to help establish a positive, public image for the fire department, as well as promote safety concerns related to a fire fighter's uniform and job duties. Inherent in the policy's purpose is the appearance of professionalism, and the pride and prestige that come with being a fire fighter. These types of concerns are largely subjective in nature and directly reflect a reasonable departmental policy. On the other hand, the policy's effect on working conditions is minimal. The individuality associated with wearing cosmetics, jewelry, or a certain type of hairstyle or mustache is of little consequence in the fire fighter's ability to perform his or her job duties.[7] We do not equate a policy that affects a person's sense of personal freedom to one that affects working conditions. Therefore, we hold the revised grooming policy did not constitute a "condition of employment" under the FPERA. The City did not violate its statutory duty to bargain on the subject, nor did the City violate the prevailing rights clause of the collective bargaining agreement. The Association's first issue is overruled.

By its second issue, the Association contends the City violated its statutory duty to bargain in good faith when it formed an employee committee to survey fire fighters about grooming standards instead of seeking the information through the Association. Because this argument is conditioned upon a finding that the grooming standards in this case constitute a condition of employment, we need not address it. TEX.R.APP. P. 47.1.

## VARB RULES

■ The City's appeal in the present case concerns the trial court's finding that the VARB procedural rules affected the fire fighters' conditions of employment and its consequential ruling which enjoined the City from implementing the revised rules in its fire department. The City raises eleven points of error in its appeal. In points one through five, seven, nine, and ten, the City challenges the legal and factual sufficiency of the evidence and claims the new rules were not the subject of mandatory bargaining as a matter of law. We, however, agree with the Association that the City's arguments focus primarily on whether the unilateral implementation of the VARB rules constituted a condition of employment as a matter of law. The City concedes this much in its brief by stating that there are no disputed fact issues and the issue is purely a matter of law.

■ Applying the balancing test adopted above, the initial question is whether the City's implementation of the VARB rules had a greater effect on working conditions than on management prerogatives. If the rule had a greater effect on working conditions, then it can be characterized as a condition of employment and the City was required to bargain on the subject.

As stated, the primary difference to the new rules allows points to be accrued based on an employee's off-duty driving violations as well as for on-duty driving violations. For instance, under the old

---

**7.** It is conceivable that relaxing the grooming standards to the point of creating a safety concern could affect job performance, but those are not the circumstances of this case.

rules, a point accrual system existed for on-duty accidents involving city vehicles, the failure to use seat belts in a city vehicle, and the failure to report an accident. Accrual of three or more points in a 12–month period required an employee/driver to attend driver training classes. If an employee accrued six points within a 12–month period, then driving privileges were automatically suspended for twelve months.

In addition to assessing points for on-duty accidents as before, the new rules provided that points would also be accrued for off-duty driving violations including accidents, seatbelt violations, and moving violations [8] based on an annual review of the employee's driving record with the Texas Department of Public Safety. Further, a conviction or probation stemming from a driving while intoxicated charge, which occurred after the employee's hire date, would result in an immediate driving suspension for six months. A second conviction would result in permanent suspension of an employee's driving privileges. The City also reserved the right to subject an employee who operates a vehicle in the course and scope of his employment to a mandatory examination with a City-designated physician if there is concern about the employee's physical and mental ability to safely operate a vehicle. Another significant revision to the rules pertained to any employee applying for a promotion or transfer from a position which does not require driving to one which does. The employee would not be considered for the promotion or transfer if he or she received two or more driving violations within the previous year, a total of three or more within the previous three years, or a single driving while intoxicated conviction within the previous three years.

Finally, the new rules provided that accrual of four or more points within a 12–month period or accrual of seven points within a 36–month period, prior to the anniversary of the employee's birth date, would require an employee/driver to attend driver training classes. Accrual of seven points within a 12–month period or eleven points within a 36–month period, prior to the anniversary of the employee's birth date, would automatically suspend driving privileges for six months. A second suspension under these terms would suspend driving privileges for twelve months, and a third would suspend driving privileges permanently.

Because the evidence at trial showed that approximately one-third of the City's fire fighters are required to drive, the implementation of any rule which could prohibit their ability to drive, be promoted, or be transferred could have a significant effect on the fire fighters' working conditions.

The City, however, has significant safety interests which fall within its management prerogatives. Patricio Alba, Risk Manager for the City, stated that the revised rules were based on the City's concern for the safety of its employees that drive city vehicles as well as the general public. Alba explained that his department's review of all employees who drive city vehicles revealed that those employees who had accidents on the job generally had bad off-duty driving records. He cited one instance in which the City was sued after a city employee ran over a young girl with a city vehicle. The City subsequently found out that although the employee had a good driving record with the City, he had several off-duty violations. Alba further explained the safety concerns associated with driving a large, heavy fire truck in emergency situations. We have no trouble in determining that these are obvious and legitimate concerns.

After balancing the competing interests of the Association and the City, we hold the revised VARB rules have a greater impact on the City's management prerogatives, and thus, do not constitute a condition of employment that is subject to mandatory bargaining between the Association

---

8. Convictions for off-duty moving violations and seat belt violations allow one point to be added to an employee's VARB point score. Off-duty accidents are worth two points.

and the City. The City has a right to implement rules or policies that help to *promote public safety, and as a matter of* policy, public safety should not be a mandatory subject of bargaining. Unlike a private employee, the performance of a public employee, such as a fire fighter or police officer directly affects the welfare of public citizens, and the Association should not be given an unlimited right to demand collective bargaining on issues which have a potentially strong effect on public safety. Therefore, we hold that the City did not violate its duty to bargain with the Association concerning the VARB rules and the trial court erred in holding otherwise. The City's points of error one through five, seven, nine, and ten are sustained. We need not address the City's remaining points of error as they are not dispositive to this appeal. TEX.R.APP. P. 47.1.

In light of our holdings in these cross-appeals, we overrule the Association's third point of error claiming that the trial court abused its discretion by denying the Association's request for attorney fees and costs under section 37.009 of the civil practice and remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997).

Accordingly we affirm the trial court's judgment in part, reverse in part, and render judgment for the City.