NUMBER
13-01-00119-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                      CORPUS CHRISTI B EDINBURG

 

McALLEN POLICE OFFICERS UNION AND

THE CITY OF McALLEN,                                                      Appellants,

 

                                                   v.

 

RICARDO TAMEZ, INDIVIDUALLY AND AS

PRESIDENT OF THE McALLEN PROFESSIONAL

LAW ENFORCEMENT ASSOCIATION, AND

McALLEN PROFESSIONAL LAW
ENFORCEMENT

ASSOCIATION,                                                                  Appellees.

 

      On appeal from the 93rd District Court
 of Hidalgo County, Texas.

 

 

                                   O P I N I
O N

 

         Before Chief Justice Valdez and
Justices Hinojosa and Castillo

                                 Opinion by
Justice Hinojosa

 








Appellants, the City of McAllen,
Texas and the McAllen Police Officers Union, appeal from an order of the 93rd District Court of Hidalgo County, requiring the City to conduct an
election to determine the exclusive bargaining agent for the City=s police officers.  We reverse and render.

                                                A.  Background

At an election held on May
 6, 2000,
the voters of the City of McAllen approved collective bargaining for the City=s police department.  See
Tex. Loc. Gov=t Code Ann. ' 174.051 (Vernon 1999).  At that time, two unions B the McAllen Police Officers Union (MPOU) and the McAllen
Professional Law Enforcement Association (MPLEA) B
sought recognition as the exclusive bargaining agent for McAllen police officers.  Soon after the election, the McAllen city manager, Mike Perez, met with
representatives of the two unions in an attempt to obtain an agreement on how
to select the bargaining agent for the police officers.  From May 8 through June
 1, 2000,
and while discussions between the City and the two unions were ongoing,
representatives of MPOU circulated a petition seeking support for the
designation of MPOU as the bargaining agent for the officers.








On June 1, MPOU sent the petition,
which contained 133 signatures of the police department=s 228 officers, to Perez together
with a request that MPOU be recognized by the City as the exclusive bargaining
agent for the officers.  Upon receiving
the petition, Perez expressed concerns regarding the petition=s validity.  In response to those concerns, a
representative of MPOU posted a notice in the police department=s bulletin board, advising all
officers of Perez=s concerns of possible coercion and
stating that any officer who felt that he or she had been intimidated into
signing the petition should contact Perez. 
Perez received no complaints of intimidation from any officer.  In addition, the president of MPOU submitted
an affidavit certifying that the petition had been circulated from May 8
through June 1, 2000.  His concerns
satisfied, Perez advised both unions that he intended to recommend to the
McAllen City Commission that it accept MPOU=s
petition as evidence of majority representation.

On August 14,
 2000, the
McAllen City Commission took up the issue of which union to recognize as the
exclusive bargaining agent for the City=s police officers.  Specifically, the City Commission considered
whether to recognize MPOU as the bargaining agent.  The City Commission heard from a
representative of MPLEA, however MPLEA did not present the commission with any
evidence that it represented a majority of the City=s police officers.  After hearing from MPLEA, the City Commission
voted unanimously to recognize MPOU as the exclusive bargaining agent for the
City=s police officers.

On August 24,
 2000, appellees, MPLEA and Ricardo Tamez,
individually and as president of MPLEA, sued the City in the district
court.  Appellees
asked the court for:  (1) a declaratory
judgment that a question existed regarding which union was the exclusive
bargaining agent for the City=s police officers; and (2) a writ
of mandamus compelling the City to conduct an election to determine whether
MPLEA or MPOU should be recognized as the exclusive bargaining agent for the
officers.  See Tex. Loc. Gov=t Code
Ann. ' 174.104 (Vernon 1999).  The City answered and filed a third-party
petition against MPOU as the true party in interest.  On January 29, 2001, after hearing evidence
and argument from all parties, the trial court ordered the City to hold an
election to determine whether MPOU or MPLEA should be the exclusive bargaining
agent for the City=s police officers.  This appeal ensued.








                                          B.  Standard
of Review

                                          1.  Mandamus Proceedings

The Texas Supreme Court has
recognized that an appeal from a proceeding for a writ of mandamus initiated in
a trial court is treated differently from an appeal from a proceeding for a
writ of mandamus initiated in a court of appeals.  See Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991).  AWe do not review the trial court's
findings of fact and conclusions of law under the abuse of discretion standard
applicable to mandamus actions originating in appellate courts.@ 
Univ. of Tex. Law Sch. v. Texas Legal
Found., 958 S.W.2d 479, 481 (Tex. App.BAustin 1997, no writ) (citing Anderson,
806 S.W.2d at 794 n.2).  Rather, Awe review them in accordance with
the standards generally applicable to trial-court findings and
conclusions.  That is, we review findings
of fact for legal and factual evidentiary support . . . and we review conclusions
of law de novo.@ 
Univ.
of Tex. Law Sch., 958 S.W.2d at 481
(citing Anderson, 806 S.W.2d at 794; City of Austin v. Austin Prof=l Fire Fighters Ass'n, 935 S.W.2d 179, 181(Tex. App.BAustin 1996), judgment vacated
pursuant to settlement, No. 97-0077 (Tex. 1997)).  








A trial court's conclusions of law
are not binding on this Court, and we are free to make our own legal
conclusions.  Harlingen Irrigation
Dist. Cameron County No. 1 v. Caprock Communications,
49 S.W.3d 520, 530 (Tex. App.BCorpus Christi 2001, pet denied); Muller
v. Nelson Sherrod & Carter, 563 S.W.2d 697, 701 (Tex. Civ. App.BFort Worth 1978, no writ).  AConclusions of law are reviewed de
novo as a question of law and will be upheld if the judgment can be sustained
on any legal theory supported by the evidence.@  Harlingen Irrigation Dist., 49 S.W.3d
at 520 (citing Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal
Dist., 981 S.W.2d 483, 485 (Tex. App.BAustin 1998, no pet.)).  A trial court's conclusions of law may not be
reviewed for factual sufficiency.  Id.  Conclusions of law may be reversed only if
they are erroneous as a matter of law.  Stable
Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex. App.BAustin 1999, pet. denied); Hofland v. Fireman's Fund Ins. Co., 907
S.W.2d 597, 599 (Tex. App.BCorpus Christi 1995, no writ).  Incorrect conclusions of law do not require
reversal, provided that the controlling findings of fact support a correct
legal theory.  Stable Energy, 999
S.W.2d at 547. 

                                          2.  Declaratory Judgments

Declaratory judgments are reviewed
under the same standards as other judgments and decrees. Tex. Civ. Prac. & Rem. Code Ann. ' 37.010 (Vernon 1986).  The trial court's conclusion, being one of
law, is reviewed de novo and will be upheld if the judgment can be sustained on
any legal theory supported by the evidence. 
Harlingen Irrigation Dist., 49 S.W.3d at 530; Hall, Standards
of Appellate Review in Civil Appeals, 21 St.
Mary's L.J. 865, 923-24 (1990). 
If reversal is warranted, we render the judgment the trial court should
have rendered, unless a remand is necessary for further proceedings or the
interests of justice require a remand. Tex.
R. App. P. 43.3; see also Lone Star Gas Co. v. R.R. Comm=n of Tex., 767 S.W.2d 709, 710 (Tex. 1989)
(quoting former Tex. R. App. P.
81(c)). 

                      C.  Selection
of Bargaining Agent by Petition








In MPOU=s first issue and the City=s first issue, appellants contend
the trial court erred by concluding that a petition is not a proper method of
selecting an exclusive  bargaining agent
under section 174.102 of the local government code.  Tex.
Loc. Gov=t Code Ann. ' 174.104 (Vernon 1999).  MPOU and the City assert that a petition is a
proper means of demonstrating selection of an exclusive bargaining agent by a
majority of the City=s police officers for purposes of
section 174.102.  Appellees
do not contend that selection of an exclusive bargaining agent by petition is
improper under section 174.102.

Section 174.102 of the Texas Local
Government Code provides:

A public employer shall recognize
an association selected by a majority of the police officers of the police
department of a political subdivision as the exclusive bargaining agent for the
police officers of that department unless a majority of the police officers withdraw
the recognition.

 

Tex. Loc.
Gov=t Code
Ann. ' 174.102 (Vernon 1999).  Section 174.102 does not specify how a
majority of the police officers shall select the exclusive bargaining agent.

We note
that the legislature enacted a similar statute for fire fighters in
municipalities with a population of 1.5 million or more.  That statute provides that a petition signed
by a majority of the fire fighters in the municipality is a proper method for
selecting the exclusive bargaining agent. 
Tex. Loc. Gov=t Code Ann. '
143.204 (Vernon 1999).  We conclude that
the subject matter of section 143.204 is sufficiently similar to that of
section 174.102 so as to be instructive in our interpretation of the latter.

We hold that
the selection of a bargaining agent by municipal police officers under section
174.102 may be accomplished by means of a petition.  Tex.
Loc. Gov=t Code Ann. ' 174.102; see also Linden Lumber
Div. v. N.L.R.B., 419 U.S. 301, 304 (1974) (recognizing Athat while the election process has
acknowledged superiority in ascertaining whether a union has majority support,
[signed employee authorization] cards may adequately reflect employee sentiment@). 
We hold the trial court erred when it concluded that a petition is not a
proper method of selecting the exclusive bargaining agent under section
174.102.  We sustain MPOU=s first issue and the City=s first issue.








                                                    D.  Coercion

In its
second issue, MPOU contends there is no evidence that the petition, selecting
MPOU as the exclusive bargaining agent for the City=s police officers, did not reflect
the free choice of the officers who signed it.

The trial
court made the following findings of fact:

1.18   MPLEA did not have a reasonable chance to
present its views and to insure the employee=s
choice was not the result of group and/or supervisory pressures and/or
misrepresentation and/or coercion instead of an individual decision made with
adequate safeguards and assurances of privacy.

 

1.20   Three supervisors and one other personnel
aligned with MPOU presented a petition to McAllen police officers.

 

Based on the these findings, the
trial court concluded:

 

2.10   The use of petitions utilized and signed by
those purportedly supporting MPOU was unfair and improper, and not a reliable
indicator of the police officer=s true desires.

 

2.12   Police officers may have been, and more
likely than not were improperly influenced by their superiors and/or
co-workers.

 

                                             1.  Finding of Fact 1.18

The record
shows that MPLEA president Ricardo Tamez sent a
letter to the McAllen city manager stating it was his understanding that an
election was going to be held to determine which union would be designated the
exclusive bargaining agent for the City=s police officers.  Tamez claimed there
was Asome confusion@ being created by a petition MPOU
was circulating which asked that MPOU be recognized as the bargaining agent for
the City=s police officers.  Tamez accused MPOU
of disseminating Amisinformation@ to the officers.








John Curtis,
General Counsel for the Combined Law Enforcement Associations of Texas (CLEAT),
later sent a letter to the city manager on behalf of MPLEA.  Curtis raised the concern that MPOU=s petition was being circulated by
supervisors, complained that the petition process lacked secrecy, and
questioned whether officers had voluntarily signed the petition.

Curtis, on
behalf of MPLEA, addressed the McAllen City Commission at its August 14, 2001,
meeting and asked the commission to consider ordering an election.  After Curtis finished his presentation, the
commission voted unanimously to recognize MPOU as the exclusive bargaining
agent for the City=s police officers.

We have
reviewed the entire record and find no evidence to support the trial court=s finding of fact 1.18.  The record contains absolutely no evidence
that MPLEA was prevented from presenting its view to the City or was prevented
from contacting any officers to ascertain whether they had voluntarily signed
MPOU=s petition.

                                             2.  Finding of Fact 1.20

The
president of MPOU, Sergeant Michael Zellers,
testified that he, Officer Rigoberto Gonzalez, and
Sergeants Sam Palomo and Oscar Saldana circulated the
petitions.  We conclude the evidence is
legally and factually sufficient to support the trial court=s finding of fact 1.20.

                                             3.  Conclusions of Law

We now
examine the trial court=s conclusions of law to determine
whether they are erroneous, as a matter of law. 
The trial court concluded that the petition process was unfair,
improper, and unreliable, and that the officers who signed the petition were
likely improperly influenced by their supervisors.  Appellees contend
the MPOU petition was not fairly solicited because there was supervisor
involvement.  We disagree.








The mere
fact that a petition for the selection of an exclusive bargaining agent is
circulated by a supervisor is not, by itself, sufficient to support a
conclusion that the petition process is unfair, improper or unreliable.  The authorities cited by appellees
in support of the trial court=s conclusions involve persons who
met the definition of Asupervisor@ specifically set forth in the
National Labor Relations Act (NLRA), and who actually supervised a substantial
number of the persons who signed the petitions. 
See 29 U.S.C. ' 152(11).  The NLRA defines a supervisor as follows:

The term Asupervisor@ means any individual having
authority, in the interest of the employer, to hire, transfer, suspend, lay
off, recall, promote, discharge, assign, reward, or discipline other employees,
or responsibly to direct them, or to adjust their grievances, or effectively to
recommend such action, if in connection with the foregoing the exercise of such
authority is not of a merely routine or clerical nature, but requires the use
of independent judgment.

 

Id.








In N.L.R.B.
v. Heck=s, Inc., 386 F.2d 317, 322 (4th Cir.
1967), the Fourth Circuit Court of Appeals explained the rationale behind not
allowing Asupervisors@ to solicit signatures on union
authorization cards.  In Heck=s, several department heads[1]
who met the N.L.R.A.=s definition of Asupervisor@ participated in the union=s campaign to obtain recognition,
despite opposition from the company=s management.  Id. 
The court found that participation by the department heads was
sufficient to taint the drive for unionization and call into question the voluntariness of the signatures on the authorization
cards.  Id.  The Court explained that the types of
day-to-day authority which elevated the department heads to the status of Asupervisors@ also provided a basis for
potential tyranny when that same authority was improperly exercised by a
supervisor thwarted in his aim to obtain union recognition.  Id.

However, in
situations where supervisory personnel do not meet the statutory definition of Asupervisor,@ or where the participation of the
supervisory personnel in the union organizing activities is minimal, the courts
have been reluctant to find any impropriety in the unionization process.  See Conn. Distribs.,
Inc. v. N.L.R.B., 681 F.2d 127, 129 (2nd Cir. 1982) (where employee=s duties were of essentially
routine nature, evidence was far from clear that employee met statutory
definition of Asupervisor,@ and accordingly, anti-union petition
circulated by said employee could not be attributed to company=s management); Int=l Union v. N.L.R.B., 363 F.2d 702, 707 (D.C. Cir.
1966) (limited participation and unclear status of the involved supervisory
personnel negatived the possibility that they may
have coerced employees into signing union authorization cards); N.L.R.B. v.
Majestic Weaving Co., 355 F.2d 854, 858 (2nd Cir. 1966) (employees who
engaged in union organizing activities lacked supervisory authority; therefore,
there was no basis to find that company=s management rendered unlawful
assistance to union attempting to organize). 
We find these cases instructive in determining whether the officers in
the present case were coerced into signing the petition.








We have
reviewed the entire record and find no evidence showing the number of
signatures that supervisors solicited from their respective officers.  Also, the record contains no evidence that
the sergeants who circulated the petition had any actual supervisory authority over
the officers.  Because the evidence does
not support any legal theory which would sustain the judgment in the present
case, we conclude that the trial court=s conclusions of law 2.10 and 2.12
cannot be upheld.  Harlingen
Irrigation Dist., 49 S.W.3d at 530. 
Accordingly, we hold that the trial court=s
conclusions of law 2.10 and 2.12 are erroneous, as a matter of law.  Id. 
MPOU=s second issue is sustained.

                      E.  The AQuestion@ of
Majority Representation

In its
third issue, MPOU contends that only a public employer has standing to raise a Aquestion@ under section 174.104(a) of the
local government code.  In the City=s second issue and MPOU=s fourth issue, appellants contend
that the mere existence of a competing union and unsupported allegations that
MPLEA represented a majority of the City=s officers are insufficient to
raise such a Aquestion.@[2] 
See Tex. Loc. Gov=t Code
Ann. ' 174.104 (Vernon 1999).  Appellees assert
that MPLEA has raised a Aquestion@ regarding whether MPOU is the
majority representative of the officers; therefore, an election must be
conducted in accordance with section 174.104.








The issue
of who may raise a Aquestion@ under section 174.104(a) of the
local government code is an issue of first impression in Texas that presents a
question of statutory interpretation. 
Matters of statutory construction are questions of law for the courts to
decide.  Johnson v. City of Fort Worth,
774 S.W.2d 653, 656 (Tex.1989).  As such,
they are subject to de novo review. 
Armbrister v. Morales, 943
S.W.2d 202, 205 (Tex. App.BAustin 1997, no writ) (citing Barber
v. Colorado Indep. Sch.
Dist., 901 S.W.2d 447, 450 (Tex. 1995)). 
AWhen we construe a statute, our
objective is to determine and give effect to the Legislature=s intent.@ 
Am. Home Prods. Corp. v. Clark, 38 S.W.3d 92, 95 (Tex.
2000).  We may consider, among other
matters, the:  (1) object sought to be
attained; (2) circumstances under which the statute was enacted; (3) legislative
history; (4) common law or former statutory provisions, including laws on the
same or similar subjects; (5) consequences of a particular construction; (6)
administrative construction of the statute; and (7) the title (caption),
preamble, and emergency provision of the statute.  Tex.
Gov=t Code
Ann. ' 311.023 (Vernon 1998).  We start by looking at the plain and common
meaning of the statute's words, viewing its terms in context and giving them
full effect.  Liberty Mut.
Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998).  We are mindful that Aevery word in a statute is presumed
to have been used for a purpose; and a cardinal rule of statutory construction
is that each sentence, clause and word is to be given effect if reasonable and
possible.@ 
Perkins v. State,
367 S.W.2d 140, 146 (Tex. 1963).  The statute
should be considered in its entirety when determining the meaning of its
component parts.  See
Bridgestone/Firestone, Inc. v. Glyn-Jones, 878
S.W.2d 132, 133 (Tex. 1994).  We also should
presume the Legislature intended a Aresult feasible of execution@ when it enacted the statute.  In re Missouri Pac. R.R. Co., 998 S.W.2d
212, 216 (Tex. 1999) (quoting Tex. Gov=t Code
Ann. ' 311.021(4) (Vernon 1998)).  With these principles in mind, we turn to the
statutory language to be construed. 

Section
174.104(a) provides:

A question of whether an
association is the majority representative of the employees of a department
under sections 174.101-103 shall be resolved by a fair election conducted according
to the procedures agreed on by the parties.

 

Tex. Loc.
Gov=t Code
Ann. ' 174.104(a) (Vernon 1999).








The plain
language of the statute provides little guidance as to who may raise a Aquestion@ related to majority
representation; however, when read in conjunction with section 174.102, we find
that it is the Apublic employer [that] shall
recognize an association selected by a majority of the police officers.@ 
Tex. Loc. Gov=t Code
Ann. '174.102 (Vernon 1999).  Therefore, it logically follows that the
public employer, being burdened with the affirmative duty of recognizing an
association, should also be allowed to question the evidence of majority
representation.  The issue remains,
however, whether other entities may also Aquestion@ this issue.  To resolve this issue, we look to the purpose
of the statute.

The
legislature specifically provided Athat fire fighters and police
officers, like employees in the private sector, should have the right to
organize for collective bargaining, as collective bargaining is a fair and
practical method for determining compensation and other conditions of
employment.@ 
Tex. Loc. Gov=t Code
Ann. ' 174.002 (Vernon 1999) (emphasis
added).  In the private sector, employers
and labor units are governed by the National Labor Relations Act (NLRA).  29 U.S.C. ''151-169.  This Court has
previously noted that the duty to bargain collectively and in good faith
imposed by chapter 174 of the local government code is the same duty imposed by
the NLRA upon private sector employers and labor units.  Corpus Christi Fire Fighters Ass=n v. City of Corpus Christi, 10 S.W.3d 723, 726 (Tex. App.BCorpus Christi 1999, pet.
denied).  Therefore, we conclude that the
provisions of the NLRA, and the cases interpreting that Act, are instructive in
the resolution of the issue before us.








The issue
of who may Aquestion@ a demand for union recognition in
the private sector has been addressed by the National Labor Relations Board
(NLRB) and several federal courts.  In Bruckner Nursing Home, the NLRB held that
among previously nonunionized employees, Athe necessity for a Board-conducted
election attach[es] only when a properly supported
petition has been filed by one or more of the competing labor organizations.@ 
Bruckner Nursing Home, 262
N.R.L.B. 955, 958 (1982).  The NLRB
further stated:  A[w]here no petition has been filed
[by a competing labor union], an employer will be free to grant recognition to
a labor organization with an uncoerced majority. . .
.@ 
Id.  The NLRB reasoned that
the filing of a valid petition by at least one of the competing unions
indicates that it has Asubstantial support@ among the employees.  Id. at 957 n.14.  Under the NLRB=s
regulations, an election will not be held unless a petition filed by a
competing union has at least thirty percent support.  29 C.F.R. '
101.18(a).  The NLRB=s decision in Bruckner
allows competing unions to raise a Aquestion@ concerning an incumbent union=s representation, but only when the
competing union can show that it has substantial support among the employees,
in the form of a petition signed by at least thirty percent of the
employees.  Human Dev. Ass=n v. N.L.R.B., 937 F.2d 657, 666 (D.C. Cir.
1990); Hardon House Food Prods., Inc. v.
N.L.R.B., 764 F.2d 182, 186 (3rd Cir. 1985); Bruckner,
262 N.L.R.B. at 957.  We find the holding
and reasoning of the N.L.R.B. and the federal courts instructive on this issue.








Accordingly,
we hold that under chapter 174 of the local government code, like under the
NRLA, the mere existence of a competing union or association does not raise a Aquestion@ as to whether the recognized union
or association is the majority representative of the employees.  We further hold that a question concerning
representation may be raised by a competing union or association, but the
competing union or association must present the public employer with evidence,
preferably in the form of a petition, that it has Asubstantial support@ among the employees.  Allowing a third party to raise a Aquestion@ concerning a claim of majority
representation without evidence of Asubstantial support,@ would allow a single uninterested
or disgruntled person to frivolously force an election on the issue.  We conclude that such a consequence would be
unduly burdensome to the parties involved and would not be in the best interest
of the public.  See Tex. Gov=t Code
Ann. ' 311.021 (Vernon 1998) (AIn enacting a statute, it is
presumed that . . . public interest is favored over any private interest.@).

Accordingly,
we hold that MPLEA has standing to raise a question as to whether MPOU is the
majority representative of the City=s police officers.  MPOU=s third issue is overruled.

However, the
record reflects that MPLEA adduced no evidence of Asubstantial support@ among the City=s police officers.  Therefore, we hold that MPLEA has failed to
raise a Aquestion@ concerning MPOU=s majority representation.  Because no such question has been raised, we
conclude that an election under section 174.104 of the local government code is
not authorized.  We sustain the City=s second issue and MPOU=s fourth issue.

Having held
there is no evidence that MPOU=s petition did not reflect the free
choice of the officers who signed it, and having held that no Aquestion@ concerning MPOU=s representation has been raised,
we hold the trial court erred in concluding that an election was required.  In light of our disposition, it is not
necessary that we address MPOU=s remaining issue.  Tex.
R. App. P. 47.1.








We reverse
the trial court=s order and render judgment that
MPLEA=s requests for a declaratory
judgment that a question exists regarding which union is the exclusive
bargaining agent for the City=s police officers and a writ of
mandamus compelling the City to conduct an election to determine whether MPLEA
or MPOU should be recognized as the exclusive bargaining agent for the officers
are denied.

 

FEDERICO G. HINOJOSA

Justice

 

 

Dissenting opinion by 

Justice Errlinda Castillo

 

Publish.  Tex.
R. App. P. 47.3.

 

Opinion delivered and filed this
the

6th day of June, 2002.

 

 

 

 




 
 
 
 
 
 
 
 
 






 

 

 

 

 

 

                                   NUMBER
13-01-119-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
 CHRISTI

___________________________________________________________________

 

McALLEN POLICE OFFICER=S

UNION AND THE CITY OF

McALLEN, TEXAS,                                                              Appellants,

 

                                                   v.

 

RICARDO TAMEZ, INDIVIDUALLY

AND AS PRESIDENT OF THE

McALLEN PROFESSIONAL LAW

ENFORCEMENT ASSOCIATION,

AND McALLEN PROFESSIONAL

LAW
ENFORCEMENT ASSOCIATION,                                     Appellees.

___________________________________________________________________

 

                         On
appeal from the 93rd District Court

                                  of
Hidalgo County, Texas.

__________________________________________________________________

 

                            DISSENTING
OPINION

 

         Before Chief Justice Valdez and Justices Hinojosa and Castillo

                          Dissenting
Opinion by Justice Castillo

 








I
respectfully dissent.  

ERRLINDA CASTILLO

Justice

 

Publish.

Tex. R. App. P. 47.3.

 

Dissenting Opinion delivered and filed

this 6th day of June, 2002.

 

 

 











[1] The
department heads were not part of management.





[2]
In its fourth issue, MPOU also addresses the issue of coercion.  MPOU contends that an unsupported allegation
of coercion does not constitute a legitimate Aquestion@
under section 174.104(a) of the local government code.  MPOU concedes that evidence of coercion would
raise a question of whether MPOU truly represented a majority of the officers,
but asserts that appellees produced no evidence of
coercion.

We previously found no evidence in the record that police
supervisors influenced the signing of the petition and held that the trial
court erred in concluding that the officers were likely influenced in signing
the petition.  Thus, we need not address
this part of MPOU=s fourth issue.